**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
             apersinger@bursor.com
             ykrivoshey@bursor.com

*Counsel for Plaintiff*
*(additional counsel appear on signature page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE DEAN, on Behalf of Herself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COLGATE-PALMOLIVE CO. <br><br> Defendant. | Case No. 5:15-CV-00107-JGB(DTBx) <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date:  September 12, 2016 <br> Time:  9:00 a.m. <br> Courtroom 1 <br><br> Hon. Jesus G. Bernal |

## CONFIDENTIAL

## PURSUANT TO OCTOBER 5, 2015 ORDER ON AGREEMENT FOR THE DISCOVERY OF CONFIDENTIAL INFORMATION

# TABLE OF CONTENTS

PAGE(S)

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFF'S CLAIMS ARE SUSCEPTIBLE TO COMMON
        PROOF ................................................................................................................ 2

        A.      Colgate's Deep Whitening Claims Are Material to
                Consumers ................................................................................................ 2

        B.      Common Evidence Will Show That the Products Are
                Ineffective for Deep Whitening .............................................................. 5

        C.      Class-Wide Relief Can Be Proved on a Common Basis ....................... 7

III.    CERTIFYING A 10-JURISDICTION CLASS IS
        APPROPRIATE ................................................................................................ 12

IV.     THE REQUIREMENTS FOR CERTIFICATION PURSUANT
        TO FED. R. CIV. P. 23(A), AND 23(B)(3) ARE MET ................................. 16

        A.      Numerosity ............................................................................................. 16

        B.      Common Issues of Law and Fact Predominate .................................... 16

                1.      Common Questions of Fact Predominate ................................... 17

                2.      Common Questions of Law Predominate for a 10-
                        Jurisdiction Express Warranty Class .......................................... 18

                3.      Common Questions of Law Predominate Under
                        California Consumer Protection Claims ...................................... 18

        C.      Typicality ............................................................................................... 19

        D.      Adequacy of Representation .................................................................. 20

V.      SUPERIORITY ................................................................................................. 21

        A.      The Class Is Ascertainable .................................................................... 22

VI.     THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED ................. 24

VII.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Alloway v. Gen. Marine Indus., L.P.,*
149 N.J. 620 (1997) ................................................................................16

*Amchem Prods, Inc. v. Windsor,*
521 U.S. 591 (1997) .....................................................................16, 17, 22

*Astiana v. Kashi Co.,*
291 F.R.D. 493 (S.D. Cal. 2013).................................................14, 18, 22, 23

*Ballard v. Equifax Check Servs., Inc.,*
186 F.R.D. 589 (E.D. Cal. 1999) ...............................................................22

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975)....................................................................20

*Brown v. Brewer,*
2009 WL 1574556 (C.D. Cal. May 29, 2009) ..............................................20

*Brown v. Hain Celestial Group, Inc.,*
2014 WL 6483216 (N.D. Cal. Nov. 18, 2014)...........................................8, 11

*Brown v. Hain Celestial Group, Inc.,*
913 F. Supp. 2d 881 (N.D. Cal. 2012) .......................................................13

*Bruno v. Eckhart Corp.,*
280 F.R.D. 540 (C.D. Cal. 2012) ..............................................................13

*Chavez v. Blue Sky Natural Beverages Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) ................................................................8

*Chic Promotion, Inc. v. Middletown Sec. Sys., Inc.,*
116 Ohio App. 3d 363, 688 N.E.2d 278 (Ohio 1996)....................................16

*Comcast Corp. v. Behrend,*
133 S.Ct. 1426 (2013) ..............................................................................7

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001)...................................................................21

*Daughtrey v. Ashe,*
243 Va. 73 (1992)...................................................................................14

*Dawson v. Canteen Corp.,*
158 W. Va. 516 (1975).............................................................................16

*Dean v. Colgate-Palmolive Co.*,
2015 WL 3999313 (Bernal J.) ..................................................5, 25

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011) ...............................................4

*Fentress Families Trust v. Va. Elec. & Power Co.*,
81 Va. Cir. 67 (Va. Cir. Ct. 2010) ............................................16

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)...........................passim

*Gafcon, Inc. v. Ponsor & Assocs.*,
98 Cal. App. 4th 1388 (2002)....................................................19

*Galvan v. KDI Distribution Inc.*,
2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ..........................24

*Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*,
2008 WL 2074107 (E.D. Mo. May 14, 2008).........................15

*Godec v. Bayer Corp.*,
2011 WL 5513202 (N.D. Ohio Nov. 11, 2011) ................14, 15

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) ...........................22

*Guido v. L'Oreal, USA, Inc.*,
2014 WL 6603730 (C.D. Cal. July 24, 2014) ..........................11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....................................18, 20, 22

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)....................................................19

*Hauter v. Zogarts*,
14 Cal. 3d 104 (1975)................................................................16

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........................25

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2013 WL 5429718 (N.D. Cal. June 20, 2013) ..........................8

*In re Computer Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ............................................12

*In re ConAgra Foods*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015)......................................................14

*In re Diamond Foods, Inc., Sec. Litig.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ..............................................................8

*In re Hardieplank Fiber Cement Siding Litig.*,
   2013 WL 3717743 (D. Minn. July 15, 2013)........................................14

*In re High-Tech Employee Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) ......................................................8, 10

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ....................................................11, 12

*In re Steroid Hormone Prod. Cases*,
   181 Cal.App.4th 145 (2010).................................................................18

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009)...........................................................................19

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products Liab.
   Litig.*,
   2012 WL 4904412 (C.D. Cal. Sep. 20, 2012)........................................12

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ...........................................................25

*Interco, Inc. v. Randustrial Corp.*,
   533 S.W.2d 257 (Mo. Ct. App. 1976) ....................................................15

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014)..................................................................7

*Johnson v. Gen. Mills, Inc.*,
   275 F.R.D. 282 (C.D. Cal. 2011) ...........................................................22

*Khoday v. Symantec Corp.*,
   2014 WL 1281600 (D. Minn. Mar. 13, 2014)........................................11

*Khorrami v. Lexmark Int'l Inc.*,
   2007 WL 8031909 (C.D. Cal. Sept. 13, 2007)......................................13

*Lanovaz v. Twinings N. Am. Inc.*,
   2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ......................................25

*Leyva v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013)...............................................................7, 8

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) .................................................................8, 23

*Lilly v. Jamba Juice Co.*,
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)........................................................25

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    2013 WL 5574626 (D.N.J. Oct. 9, 2013)................................................................15

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
    97 Cal. App. 4th 1282 (2002)................................................................................18

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)..........................................................................12, 13

*McCrary v. Elations Co., LLC*,
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...............................................passim

*Melgar v. Zicam LLC*,
    2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ...............................................13, 23

*Melgar v. Zicam*,
    2014 WL 5486676 (E.D. Cal. Oct. 29, 2014) ......................................................21

*Michael v. Wyeth, LLC*,
    2011 WL 2150112 (S.D.W. Va. May 25, 2011) ...................................................15

*Microsoft v. Motorola, Inc.*,
    904 F.Supp.2d 1109 (W.D. Wa. 2012) ................................................................11

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735 (1980)................................................................................19

*Norcold, Inc. v. Gateway Supply Co.*,
    154 Ohio App. 3d 594 (Ohio Ct. App. 2003) .......................................................14

*Optic White.  Kwikset Corp. v. Sup. Ct.*,
    51 Cal. 4th 310 (2011)......................................................................................4, 18

*Pack & Process, Inc. v. Celotex Corp.*,
    503 A.2d 646 (Del. Super. 1985) .........................................................................14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ......................................................................................12, 13

*Picker X-Ray Corp. v. Gen. Motors Corp.*,
    185 A.2d 919 (Mun. Ct. App. D.C. 1962) ...........................................................16

*Providence Vill. Townhome Condo Ass'n v. Allied Plywood Corp.*,
  37 Va. Cir. 1992 (1995) .................................................................. 15

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................ 23, 25

*Rock Creek Ginger Ale Co. v. Thermice Corp.*,
  352 F. Supp. 522 (D.D.C. 1971) ..................................................... 14

*Rush v. Nutrex Research, Inc.*,
  2012 WL 2196144 (N.D. Cal. June 13, 2012) ................................ 19

*S&R Assocs., L.P., III v. Shell Oil Co.*,
  725 A.2d 431 (Del. 1998) ............................................................... 16

*Saavedra v. Eli Lilly and Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ................................ 12

*Sanchez-Knutson v. Ford Motor Co.*,
  310 F.R.D. 529 (S.D. Fl. 2015) ...................................................... 11

*Scheuler v. Aamco Transmissions, Inc.*,
  1 Kan. App. 2d 525 (Kan. Ct. App. 1977) ..................................... 16

*State by Division of Consumer Protection v. GAF Corp.*,
  760 P.2d 310 (Utah 1998) .......................................................... 15, 16

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ........................................................ 19

*Thurston v. Bear Naked, Inc.*,
  2013 WL 5664985 (S.D. Cal. Jul. 30, 2013) .................................. 22

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ................................................................... 17

*Valazquez v. GMAC Mortg. Corp.*,
  605 F. Supp. 2d 1049 (C.D. Cal. 2008) .......................................... 19

*Viking Yacht Co. v. Composites One LLC*,
  496 F. Supp. 2d 462 (D.N.J. 2007) ................................................. 15

*Wal-Mart Stores Inc., v. Dukes*,
  131 S.Ct. 2541 (2011) .................................................................... 17

*Weiner v. Dannon Co., Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ................................................... 22

*Weinstat v. Dentsply International, Inc.*,
   180 Cal. App. 4th 1213 (2010)..........................................................13, 15

*Wetzl v. Capital City Real Estate, LLC*,
   73 A.3d 1000 (D.C. Ct. App. 2013) .............................................14

*Williams v. Gerber Products Co.*,
   552 F.3d, 934 (9th Cir. 2008)......................................................19

*Wolin v. Jaguar Land Rover N. Amer., LLC*,
   617 F.3d 1168 (9th Cir. 2010)....................................................20

*Worley v. P&G Mfg. Co.*,
   241 Mo. App. 1114 (Mo. Ct. App. 1952) ...........................16

*Yamada v. Nobel Biocare Holding AG*,
   275 F.R.D. 573 (C.D. Cal. 2011) ..............................................18

*Yarusso v. Int'l Sport Mktg., Inc.*,
   1999 WL 463531 (Del. Super. Apr. 1, 1999).......................14

*Young & Cooper, Inc. v. Vestring*,
   214 Kan. 311 (1974)......................................................................14

**STATUTES**

Cal. Civ. Code § 1770.........................................................................18

Kan. Stat. Ann. § 50-639(b) (West)..............................................16

Kan. Stat. Ann. § 84-2-313 .............................................................14

Utah Code Ann. § 70A-2-313 (1980) ..........................................15

**RULES**

Fed. R. Civ. P. 23........................................................................passim

**OTHER AUTHORITIES**

Manual For Complex Litigation,
   Fourth § 21.311 (Fed. Jud. Center 2004) ............................24

U.C.C. § 2-313.....................................................................................14

# I.   INTRODUCTION

Colgate has made millions of dollars selling Optic White toothpaste based on false hope.  *See* Persinger Decl. Exhibit[1] 11 at 13568 (depicting "hope in a jar" and stating that consumers are "[w]illing to try compelling products, hoping that they would deliver a higher level of whitening"); Ex. 2 at 14051 (showing dollar sales figures).  Since October 2013, the Optic White labels at issue have uniformly stated that Optic White "Goes Beyond Surface Stain Removal To Deeply Whiten" teeth.  *See* Class Cert. Stip., Dkt. No. 45, ¶¶ 1, 5.  Since February 2014, the Optic White Platinum product labels at issue have uniformly represented that Optic White Platinum "Deeply Whitens More Than 3 Shades."  *Id.* at ¶¶ 2, 9-10.   Both products contain the same supposed whitening ingredient "1% hydrogen peroxide."  *Id.* at ¶ 13.  But the 1% hydrogen peroxide in Optic White does not go beyond surface stain removal, and does not deeply whiten teeth.  *See e.g.*, Compl., Dkt. No. 1, ¶¶ 1, 15-25.  Based on Colgate's false and misleading "deep whitening" claims, Plaintiff Jacqueline Dean and the class members she seeks to represent bought Optic White at a premium price.  Thus, Plaintiff seeks certification of a class defined as follows:

> All persons in California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia who purchased Optic White[2] on or after October 1, 2013, or who purchased Optic White Platinum[3] on or after February 1, 2014.

As detailed below, Plaintiff has met each requirement of Rule 23(a), Rule

---

[1] All Exhibits (hereafter "Ex." or "Exs.") referenced herein are attached to the Declaration of Annick M. Persinger in Support of Class Certification.

[2] The Optic White toothpaste at issue includes Sparkling White, Icy Fresh, Enamel White, Sparkling Mint, and Cool Mild Mint.  *See* Class Cert. Stip., Dkt No. 45, ¶¶ 1, 5.  Plaintiff has excluded from the class purchasers who bought Optic White before October 2013 because the labels did not include the claims at issue.  *See id.* ¶¶ 6-7.

[3] The Optic White Platinum toothpaste at issue includes White & Radiant (formerly known as Optic White Platinum Whiten & Protect), and Lasting White (formerly known as Optic White Platinum Whiten & Protect).  *See* Class Cert. Stip., Dkt. No. 45, ¶ 2; *id.* ¶¶ 9-10.  Plaintiff has excluded from the class products in the Platinum line that contain different concentrations of hydrogen peroxide, and that do not have the labeling claims at issue.  *See id.* at ¶¶ 2, 8.

23(b)(3), and Rule 23(b)(2) and this Court should grant class certification.

## II. PLAINTIFF'S CLAIMS ARE SUSCEPTIBLE TO COMMON PROOF

### A. Colgate's Deep Whitening Claims Are Material to Consumers

Whitening toothpaste is the number one sought after type of toothpaste. *See* Gallagher Dep.[4], 83:15-84:15; Ex. 3 at 22456. Since 2010, sales of whitening toothpastes have been over $2 billion a year and are continuing to grow. *See* Gallagher Dep. 87:5-88:20; Ex. 3 at 22457. As Colgate explains, "The Truth about Whitening" is that "WHITENING is to Oral Care, what DIETING is to the Food industry." Ex. 11 at 13545 (emphasis in original). In other words, consumers buy whitening toothpaste because they want "noticeable [whitening] results and they don't want to put the effort in, they want it to be very easy for them." *See* Gallagher Dep. 175:13-17. Colgate knows that "[c]onsumers don't tend to be satisfied with the whitening they have, they always want something that's faster or they want something that gives them stronger results." *Id.* at 178:23-179:2; *id.* at 177:11-13 (same). To capitalize on consumer demand for whitening, in 2011, Colgate introduced Colgate Optic White toothpaste. *See id.* 54:4-5 (OW launched in 2011).

But two years after launch, Optic White sales were still lagging behind the competition: Crest 3D White made by Procter & Gamble ("P&G"). *See id.* at 54:21-55:5 (Optic White's "main competitor is Crest 3D White"); *id.* at 64:14-65:14; Ex. 2 at 14020. In fact, from the time that Optic White had been released to the market in 2011 until the end of 2013, Crest 3D White consistently had a higher market share than Optic White. *Id.* In 2013, Optic White was falling even further behind because Optic White's market share growth had flat lined. *See* Gallagher Dep. at 50:1-25 ("Optic White was pretty flat in market share [in 2013] and we wanted to see an improvement in that"); *id.* at 60:11-22. As Optic White's "share plateaued," the gap

---

[4] All excerpts to the Gallagher Deposition referenced herein are attached to the Persinger Declaration as Exhibit 1.

between Optic White and Crest 3D "began to widen."  Ex. 2 at 14021.  As a result, in 2013, Colgate set goals for 2014 to "stop the share gap from widening," to "reignite growth," and to "close the gap" between Optic White and Crest 3D.  *See* Gallagher Dep. 64:14-66:6; 50:1-25; 62:25-63:7; Ex. 2 at 13993 ("Strategies … **Reignite growth on Optic White**") (emphasis in original); *id.* at 14018-19.

To "reignite growth" in 2014, Colgate developed "aggressive" new claims for Optic White.  Ex. 2 at 14057-59 ("1. Close Share Gap versus Crest 3D … 1. Exploit superiority through aggressive claims & new IMC").   Colgate's "aggressive" new claims strategy included a packaging and television "Claims Evolution."  *Id.* at 14067 ("Claims Evolution – Packaging"); *id.* at 14069 (TV).  Specifically, Optic White packaging would "start having the new claim 'Goes Beyond Surface Stains to Deeply Whiten Teeth' as an added [reason to believe]."  *Id.* at 14067-8.  As Rita Gallagher, Colgate's Associate Marketing Director, confirmed:

> Q:  … Colgate [had] some action strategies to reignite Optic White growth in 2014, do you remember that?
>
> A:  Yes, we said we would like to improve the growth of Optic in 2014.
>
> Q:  And one of those strategies … was an evolution of claims on pack, is that right?
>
> A:  Yes.
>
> Q:  And that evolution of claims on pack went to the "goes beyond surface stain removal" claim, is that correct?
>
> A:  … [T]he claim "goes beyond surface stains to deeply whiten," that change on pack was expected in 2014.

*See* Gallagher Dep. 123:21-125:3.  Television commercials in 2014 would have the same claim.  Ex. 2 at 14069-70 (abbreviated "TVC").

Ms. Gallagher further explained that "since packages are purchased at shelf," Colgate did consumer research to test how consumers would "react" to "putting [the] claim on a pack" and that "the measure … used industry-wide in research to gauge consumer reaction is purchase intent."  *See* Gallagher Dep. 99:5-16.  Colgate's

consumer research showed that, in terms of consumers' "purchase intent" or "purchase interest," the "Deeply Whiten(s)" labeling claim outperformed both the original claim on Optic White's label, as well as the claims on Crest 3D packaging. *See e.g.*, Ex. 4 at 12007 (showing that the "Deeply Whiten(s)" claim had the highest purchase intent percentage); 12011; Ex. 2 at 14067-68; Gallagher Dep. 75:20-78:7; 106:19-111:9. Based on its "purchase intent" testing, in October 2013, Colgate introduced the "Strongest Optic White Pack Claim" to date: Goes Beyond Surface Stain Removal To Deeply Whiten. Ex. 3 at 22471; Class Cert. Stip., Dkt. No. 45, ¶ 5 (introduced October 2013). Then, in 2014, the Optic White dollar share grew behind "new items, strong marketing campaigns, and more impactful claims" such as the "Upgraded Optic White Pack Claims" – "Goes Beyond Surface Stain Removal To Deeply Whiten." Ex. 8 at 22881-83; Gallagher Dep. 128:8-20; Ex. 9 at 21965.

Because Colgate's own "purchase intent" research shows that the "Deeply Whitens" claims at issue outperformed both former Optic White and competitor labeling claims, it's clear that reasonable consumers attach importance to the labeling statements at issue in determining whether to purchase Optic White. *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 332-33 (2011) (stating that a misrepresentation "is judged to be material" if "'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action'"); *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 586 (C.D. Cal. 2011); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *11 (C.D. Cal. Apr. 9, 2014); *see also* Gallagher Dep. 74:3-19 (explaining that packaging helps consumers make "a decision at shelf"); 71:17-72:3; Dean Decl. ¶ 5 (explaining that she bought Optic White based on the "Deep Whitening" claims on the label). Indeed, as discussed in detail below, Colgate's own "Optic White Price Premiumization" study demonstrates that purchasers pay at least a 56 cent price premium over other whitening toothpastes

because of the "Goes Beyond Surface Stains to Deeply Whiten" labeling claim.  *See e.g.*, Ex. 10 at 3634-45.  Thus, it is undeniable that Colgate's "Deeply Whiten(s)" claims are objectively material to consumers.  Since Colgate successfully used the representations at issue to sell Optic White at a premium price, issues of materiality and reliance are easily subject to class-wide proof in this case.

### B.   Common Evidence Will Show That the Products Are Ineffective for Deep Whitening

Contrary to Colgate's labeling and advertising representations, the 1% hydrogen peroxide in Optic White does not deeply or intrinsically whiten teeth. Toothpaste does not whiten intrinsic stains because peroxide is not in contact with consumers' teeth for long enough, and because toothpaste does not contain enough peroxide to deeply whiten teeth.  *See* Compl. ¶¶ 17-22, 24; *Dean v. Colgate-Palmolive Co.*, 2015 WL 3999313, at fn. 5 (Bernal J.) (C.D. Cal. June 17, 2015) ("[T]he Complaint cites a specific study that concluded that toothpastes with one percent hydrogen peroxide (the amount in Optic White) do not have a clinically significant whitening effect. … Moreover, the other expert statements indicate that hydrogen peroxide toothpastes, by their nature, cannot deeply whiten teeth; in other words, Optic White's 'specific formulation' would not matter.").   For example, P&G explained Optic White's inability to deeply whiten teeth as follows:

> To enable peroxide to intrinsically whiten teeth, it must be (1) held in sustained contact with the tooth surface for an extended period of time and be (2) protected from saliva.  As Colgate itself acknowledges, saliva contains a high level of the enzyme catalase, which rapidly converts peroxide into gaseous oxygen and water, even as salivary flows wash away the peroxide.  These decomposition and dilution effects are well documented in peer review literature and have been publicly accepted by Colgate's scientists and engineers.  Clinical research has also proven the point. ….
>
> Optic White has a very low concentration of peroxide, remains in the vicinity of the tooth surface for a very short period of time (typically, 2 minutes or less per brushing), over time provides much less aggregate exposure of peroxide to the tooth surface (whitening efficiency), and lacks a barrier to protect against the effects of saliva.

*See* Ex. 101 at P&G 764-767; *see also* Sagel, Paul A, Colgate Optic White In Vivo Peroxide Kinetics, Ex. 102 at P&G 630 ("[W]ithout strip protection, the peroxide concentration [in Optic White] drops immediately and saliva begins to decompose peroxide into oxygen and water as soon as you start brushing with more than 50% gone after 15 seconds."). In a patent application for a non-toothpaste whitening product, Colgate likewise explained that "saliva, contains high concentrations of the enzyme catalase, which on contact, rapidly decomposes the peroxide" and that "the low viscosities of aqueous peroxide solutions do not allow the peroxide whitening agent to remain in contact with the teeth for as long as is necessary to effect substantive whitening because of the constant flushing effects of salivary secretions." Ex. 103 at P&G 18.

P&G also conducted clinical studies to evaluate the intrinsic whitening performance of Optic White. Those study results showed that Optic White did not provide an intrinsic whitening benefit. *See e.g.* Cronin M, *Effects of H202 Containing Whitening Dentifrice on Post-prophylaxis Tooth Color*, Ex. 104 ("After 1 and 4 weeks of product use, neither [Crest Cavity Protection nor Optic White] demonstrated improvement in tooth color relative to Baseline"); Ex. 101 at P&G 767, 795-797 (same); Garcia-Godoy, *2-Week Comparative Efficacy of Whitening Strips and Whitening Paste*, Ex. 105 ("use of [Optic White] whitening paste did not demonstrate significant changes"); Biesbrock A.R., *Short-Term Efficacy of Marketed Whitening Toothpaste Relative to Negative Control*, Ex. 106 ("After 1 week of use, the whitening toothpaste [Optic White] did not demonstrate significant improvement of yellowness and lightness color parameters."); Farrell S., *Whitening Efficacy of 9.5% H202 Strips and 1% H202 Paste*, Ex. 107.

Whitening claims like Colgate's "Deeply Whiten(s)" representations are also misleading and confusing to consumers because they lead consumers to believe that they are going to "receive a paper white tooth" when, in fact, "they require a

treatment from a dentist with much stronger technology than what's available over-the-counter."  Gallagher Dep. 180:4-10; Ex. 11 at 13553.

While Colgate may dispute the merits of Plaintiff's claims by arguing that its (flawed) studies on Optic White show a whitening effect, that contention would not disturb the conclusion that common issues of fact predominate.  In other words, both parties intend to use the results of clinical studies and expert testimony to answer the common question of whether Optic White is effective for deeply whitening teeth.  Since Optic White's "efficacy can be established on a class-wide basis through clinical studies and expert testimony," a determination of the truth or falsity of Colgate's deep whitening claims "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *See Forcellati*, 2014 WL 1410264, at *9.  Plaintiff has shown that common factual issues predominate.

### C.    Class-Wide Relief Can Be Proved on a Common Basis

According to the Ninth Circuit, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Damage calculations for individual class members do not defeat certification.  *Id.* at 514-15 (interpreting *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1435 (2013) and concluding that the district court abused its discretion by basing "manageability concerns on the need to individually calculate damages"); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-69 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification.").  Additionally, according to controlling Ninth Circuit precedent, Plaintiff need only propose a valid method for calculating damages, and need not perform an actual calculation of damages.  *Leyva*, 716 F.3d at 514 (stating that at class certification, a plaintiff need only establish that "damages *could* feasibly and efficiently be calculated *once the common liability questions are adjudicated*."

(emphasis added)); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. June 20, 2013) ("*Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage." (citations omitted)); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014) ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide approach, not to actually calculate under that approach before liability is established."). Often, proposing a method for calculating damages "will impose only a very limited burden." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (relying on *Leyva*, 716 F.3d at 514). As such, Plaintiff's damages experts need not show that their methods will work with certainty at this time. *Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010); *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013); *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 582-83 (N.D. Cal. 2013).

Here, Plaintiff asserts that Optic White purchasers paid a premium based on Colgate's misrepresentation that Optic White "Deeply Whiten(s)" teeth. *See e.g.*, Compl. ¶¶ 51, 63, 72, 80, 88, 95. Accordingly, she asserts that each member of the class is entitled to a reimbursement of the price premium attributable to Colgate's deep whitening claims. *See id.* Colgate's own documents show that damages can easily be calculated once common liability issues are adjudicated because Colgate has already calculated the price premium attributable to the "Deeply Whiten(s)" claims at issue.

Colgate commissioned, funded and approved its own "Colgate Optic White Price Premiumization Study" to calculate the price premium attributable to labeling claims such as the "Goes beyond surface stains to deeply whiten teeth" claim because "Colgate aspire[d] to raise toothpaste prices and wish[ed] to find out more about which product features are more likely to persuade consumers to pay a

premium for toothpaste." Ex. 10 at 36312, 36314, 36320.  Colgate hired SKIM Consulting Group, experts in using statistical methods to value product attributes, to conduct the "Colgate Optic White Price Premiumization Study" using choice-based conjoint analysis.  Ex. 10 at 36302-03, 36316; Sukumar Decl. ¶¶ 16-26.  As SKIM explains, the choice-based Conjoint (CBC) methodology "has been used with a number of brands in personal care, beauty, foods and technology" to achieve "price premiumization" objectives.  Ex. 10 at 36316; Sukumar Decl. ¶¶ 6-15 (describing how choice based conjoint analysis measures the value of a particular feature of a product); Weir Decl. ¶¶ 20-29 (explaining that conjoint analysis is used to determine the price of an attribute of a given product).

Colgate's own Optic White Price Premiumization Study demonstrated that the claim "Goes beyond surface stains to deeply whiten teeth" had a "Pricing Power" of "$0.56" per unit as compared to a regular whitening toothpaste with the claim "Whitens better than the leading express whitening toothpaste."  Ex. 10 at 36327; Sukumar Decl. ¶ 24; Weir Decl. ¶¶ 28-33.  Based on the Optic White Price Premiumization Study, Colgate further concluded that "**[h]ard hitting, aggressive claims** are critical to support higher price points," and that "[c]laims matter in supporting premium pricing more than anything else …"  *Id.* at 36303 (emphasis in original); *id.* at 36309 (same); *id.* at 36325 (same); *see also* Weir Decl. ¶¶ 12-17 (explaining product differentiation and agreeing with Colgate that claims are critical to supporting higher price points).

Plaintiff's expert, Dr. R. Sukumar, an expert in market research and statistics with extensive experience using conjoint analysis, reviewed Colgate's "Optic White Price Premiumization Study" and concluded that it reliably showed that the "Deeply Whiten(s)" claims at issue command a $0.56 price premium.  *See* Sukumar Decl. ¶¶ 23-25; *id.* ¶¶ 1-5 (detailing qualifications); *see also* Weir Decl. ¶¶ 32-33.  Plaintiff's expert, Colin B. Weir, an expert in economics, econometrics, and statistical analysis,

proposes multiplying the price premium identified by Colgate, by the number of units purchased by each class member to determine both total and individual damages.  *See* Weir Decl. ¶¶ 29-33, ¶¶ 59-62 (calculating the percentage price premium based on Colgate's Price Premiumization study and illustrating how that percentage would be applied to sales of Optic White); Gallagher Dep. 45:14-46:14 (stating that Colgate keeps records of the number of units of OW sold).

Additionally, Mr. Weir explains that Plaintiff could also perform her own conjoint analysis or contingent valuation to calculate the price premium attributable to the claims at issue.  *Id.* at ¶¶ 34-55.  Mr. Weir also details how those statistical methodologies could be applied to the facts of this case.  *Id.*  Plaintiff's proposal to use conjoint analysis or, alternatively, contingent valuation to calculate the price premium attributable to the claims at issue provides a reliable methodology for calculating class-wide damages that is tied to Plaintiff's theory of liability – that Plaintiff and the class are entitled to restitution of the premium they paid based on Colgate's false and misleading deep whitening claims.  Indeed, numerous courts have accepted both conjoint analysis and contingent valuation as reliable methods for calculating price premiums on a class wide basis in consumer class actions.

For example, in a consumer class action case where plaintiffs proposed using conjoint analysis to calculate the price premium associated with the term "natural cheese," Judge Kronstadt of this District explained:

> [A]s required by *Comcast*, Plaintiffs have presented a method for calculating damages that is tied to their theory of liability.  They contend that each class member paid more for the Product because the term "natural cheese" was used to describe it.  From this they argue that damages can be measured by applying the analytical methodology proffered by Bodapati, i.e., the choice model theory using marketplace and conjoint experiment data sets.  This dollar amount can then be multiplied by the number of units purchased by each class member to determine both total and individual damages.

*Morales v. Kraft Foods Group, Inc.*, Order Re: Plaintiff's Motion for Class Certification, Case No. 14-cv-04387, Dkt. No. 78 (Kronstadt, J.) (C.D. Cal. Jun. 23, 2015), RJN Ex. A.  The facts here are identical.

Similarly, in *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014), Judge Snyder granted plaintiffs' motion for class certification, and concluded that the plaintiffs proposed conjoint analysis that would calculate the price premium attributable to a flammability warning on a hair product complied with *Comcast* and satisfied Rule 23's predominance requirement. Likewise, in *Brown*, the court concluded that the plaintiffs had plausibly shown that damages could be calculated where the plaintiffs proposed statistical methods, including conjoint analysis, to control for the effect of traits of cosmetic products. *Brown*, 2014 WL 6483216, at *19; *see also* Hamilton Expert Decl., *Brown v. Hain Celestial Group, Inc.*, Case No. 11-cv-03082, Dkt. No. 242-16, ¶ 48, Ex. 108 (discussing statistical methods such as conjoint analysis to calculate damages); *see also Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012) (finding Dr. R. Sukumar's conjoint analysis to value certain features offered in Microsoft's Xbox 360 console sufficiently reliable).

Courts in other circuits also accept conjoint analyses as a method for calculating class-wide damages.  *See Khoday v. Symantec Corp.*, 2014 WL 1281600, at *33 (D. Minn. Mar. 13, 2014) (finding that damages were capable of measurement on a class-wide basis where plaintiffs presented a conjoint analysis "as a means to isolate the value for specific convenience features of the download insurance products"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015) (accepting expert's proposal to "isolate the premium associated with the 50% thicker claim using one of three statistical methods: hedonic regression, a contingent valuation study, or a conjoint analysis"); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015) ("The Court accepts Plaintiff's proffered expert's

proposed conjoint analysis damages model for purposes of class certification …").[5]

The use of contingent valuation has also been accepted as a reliable methodology for calculating price premiums on a class-wide basis in consumer class actions. *See e.g.*, *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Products Liab. Litig.*, 2012 WL 4904412, at *3-4 (C.D. Cal. Sep. 20, 2012) ("Dr. Williams' proposed methods of analysis, i.e. hedonic regression, contingent valuation, and discrete choice, are generally accepted, have been tested, and are part of peer-reviewed studies."); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413-15.

Like the courts that have accepted conjoint analysis and contingent valuation as reliable methods for calculating class-wide damages, this Court should find that Plaintiff's damages theory – predicated on her assertion that class members are entitled to restitution of the price premium they paid for Optic White – is consistent with Plaintiff's liability theory in accordance with *Comcast* and *Leyva*.

## III.   CERTIFYING A TEN-JURISDICTION CLASS IS APPROPRIATE

When seeking certification of a multistate class under California law, a plaintiff bears the initial burden to show that application of California law is constitutional. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). Importantly, "unless … a [material] conflict exists, it would be impossible for the application of forum law to violate the Constitution." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 686 (N.D. Cal. 1986); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").

---

[5] *Cf. Saavedra v. Eli Lilly and Co.*, 2014 WL 7338930, *5 (C.D. Cal. Dec. 18, 2014) (distinguishing the use of conjoint analysis in a *prescription drug* market from the use of conjoint analysis to value an attribute in a *consumer* market, and stating that: "In an ordinary market, price is a proxy for value. Thus, the price paid for a good that was misrepresented to have a given characteristic can serve as a proxy for the value of a product with the misstated characteristic. Therefore, applying Dr. Hay's refund ratio [determined via conjoint analysis] to the price paid by consumers in such a market would yield a valid approximation of the value lost due to the misrepresentation.").

Under these principles, this Court should apply California's express warranty law to a ten jurisdiction class that includes: California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia.  *See Melgar v. Zicam LLC*, 2016 WL 1267870, at *2, *6 (E.D. Cal. Mar. 31, 2016) (certifying a class based on California express warranty law consisting of the same ten jurisdictions); *see also Khorrami v. Lexmark Int'l Inc.*, 2007 WL 8031909, at *3-*4 (C.D. Cal. Sept. 13, 2007) (noting that a plaintiff can "limit or subdivide the class" to comport with due process where some class members "live in states with laws that might 'conflict in any material way' with California law" (citing *Shutts*, 472 U.S. at 816)); *see also Mazza*, 666 F.3d at 594 (noting possibility of grouping states with similar laws for purposes of class certification).

With regard to Plaintiff's claim for breach of express warranty, Plaintiff has identified two potential differences in state laws: privity and reliance.  A conflict only arises if differences in state law are *material*, that is, if they make a difference *in this litigation*.  *Mazza*, 666 F.3d at 590; *see also Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) (declining to decertify a nationwide class after *Mazza* because defendant failed to show a material difference in the state laws at issue).  Under the facts of this case, Plaintiff's express warranty claim survives the reliance and privity analyses of each of the ten jurisdictions.

As to reliance, the laws of the nine other jurisdictions in the proposed class do not materially differ from California's express warranty law.  The majority of California courts find that individual reliance is not required for a breach of express warranty claim under California law.  *See Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012) ("Proof of reliance on specific promises is not required").  Even if the Court finds that reliance by a plaintiff is required, class treatment of California breach of express warranty claims is still "appropriate where

a plaintiff demonstrates that the misrepresentations are material to a reasonable consumer." *See In re ConAgra Foods*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015). Plaintiff satisfies any reliance requirement because she was exposed to and relied on the representations at issue.  Dean Decl. ¶ 5; *see also Forcellati*, 2014 WL 1410264, at *9.  The representations at issue in this case are also material to reasonable consumers.  *See supra* § II.A.  Further, Plaintiff has shown that every purchaser viewed the statements on the labels by virtue of the prominence of that statement on the product labels at the time of purchase.  *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation.").  Thus, given the facts of this case, state express warranty laws do not conflict with California law where reliance is not required, where consumers must be exposed to the representations, or where there is a requirement that representations be material to reasonable consumers.

Delaware,[6] D.C.,[7] and Kansas[8] do not require reliance.

In Ohio[9] and Virginia,[10] no actual reliance is required.  Rather, consumers must only have been exposed to the express warranties such that the representations

---

[6] *See Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 659 (Del. Super. 1985); *Yarusso v. Int'l Sport Mktg., Inc.*, 1999 WL 463531, at *6 (Del. Super. Apr. 1, 1999).

[7] *See Wetzl v. Capital City Real Estate*, LLC, 73 A.3d 1000, 1005 (D.C. Ct. App. 2013); *Rock Creek Ginger Ale Co. v. Thermice Corp.*, 352 F. Supp. 522, 526 (D.D.C. 1971).

[8] Kan. Stat. Ann. § 84-2-313 cmt. 3 (West); *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 324 (1974).

[9] *See Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App. 3d 594, 596, 623-24 (Ohio Ct. App. 2003); *Godec v. Bayer Corp.*, 2011 WL 5513202, at *4-*5 (N.D. Ohio Nov. 11, 2011), *quoting* Ohio U.C.C. § 2-313, cmt 3.

[10] *See In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743, at *17 (D. Minn. July 15, 2013); *Daughtrey v. Ashe*, 243 Va. 73 (1992).

form the basis of the bargain.[11]  Missouri[12] and Utah[13] require that consumers be exposed to the representations at issue such that the representation form the basis of bargain, and that the warranties be objectively material to reasonable consumers.  As such, the laws of each of the foregoing states are not materially different from California law.

The laws of New Jersey and West Virginia also pose no obstacle to application of California law based on the facts of this case.  *See Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *11-*12 (D.N.J. Oct. 9, 2013) (finding that the express warranty laws of California and New Jersey did not conflict).  Like in California, in New Jersey and West Virginia, reliance is presumed and can only be rebutted by a clear showing that the representation was not part of the basis of the bargain.[14]  Here, that presumption cannot be rebutted because every consumer was exposed to the representation on the label.  In fact, Colgate knows that consumers will pay a premium for Optic White because of the representations at issue.  *See supra* §II.A, II.C.  Further, consumers were deceived into believing that Colgate's representations were true.  *Compare Viking Yacht Co*, 496 F. Supp. 2d at 469 (stating that the reliance presumption can only be rebutted by "clear affirmative proof … that the buyer knew that the affirmation of fact or promise was untrue") *with McCrary*, 2014 WL 1779243, at *14 ("Defendant[s] cannot reasonably argue

---

[11] *Godec*, 2011 WL 5513202, at *4-5; *Providence Vill. Townhome Condo Ass'n v. Allied Plywood Corp.*, 37 Va. Cir. 1992 (1995).

[12] *Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*, 2008 WL 2074107, at *2-3 (E.D. Mo. May 14, 2008), *but see Interco, Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 261 (Mo. Ct. App. 1976) ("[T]he concept of reliance as required in pre-U.C.C. warranty cases was purposefully abandoned.").

[13] *State by Division of Consumer Protection v. GAF Corp.*, 760 P.2d 310, 315 (Utah 1998) *citing* Utah Code Ann. § 70A-2-313 (1980).

[14] *Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1227 (2010) (noting a "presumption that the seller's affirmations go to the basis of the bargain"); *Michael v. Wyeth, LLC*, 2011 WL 2150112, at *8 (S.D.W. Va. May 25, 2011) (anticipating that West Virginia's "high court would follow the rebuttable presumption approach" to a finding that the representation at issue formed part of the basis of the bargain); *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 469 (D.N.J. 2007).

that a putative class member would purchase a product that does not work") *and* Ex. 4 at 12035 (consumer research showing that the vast majority of respondents found the Optic White claim believable).  Thus, the deep whitening claims at issue clearly form part of the basis of the bargain, and New Jersey and West Virginia express warranty laws are not in conflict with California law.

The second element of an express warranty claim that differs from state to state is contractual privity.  None of the states in Plaintiff's ten-jurisdiction class require privity.[15]  Because California's express warranty law does not differ from the laws of the nine other jurisdictions in the proposed class, the Court should certify Plaintiff's ten-jurisdiction express warranty class.

## IV. THE REQUIREMENTS FOR CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(A), AND 23(B)(3) ARE MET

### A. Numerosity

Colgate does not dispute that the proposed class is "so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1); Class Cert. Stip., Dkt. No. 45, ¶ 3.

### B. Common Issues of Law and Fact Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  As the Supreme Court recently emphasized:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

---

[15] *Hauter v. Zogarts*, 14 Cal. 3d 104, 115, n.8 (1975); *S&R Assocs., L.P., III v. Shell Oil Co.*, 725 A.2d 431, 437 (Del. 1998); *Picker X-Ray Corp. v. Gen. Motors Corp.*, 185 A.2d 919, 923 (Mun. Ct. App. D.C. 1962); Kan. Stat. Ann. § 50-639(b) (West); *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 528 (Kan. Ct. App. 1977); *Worley v. P&G Mfg. Co.*, 241 Mo. App. 1114, 1122 (Mo. Ct. App. 1952); *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 642 (1997); *Chic Promotion, Inc. v. Middletown Sec. Sys., Inc.*, 116 Ohio App. 3d 363, 688 N.E.2d 278, 282 (Ohio 1996); *State by Division of Consumer Protection v. GAF Corp.*, 760 P.2d 310, 315 (Utah 1988); *Fentress Families Trust v. Va. Elec. & Power Co.*, 81 Va. Cir. 67, 76 (Va. Cir. Ct. 2010); *Dawson v. Canteen Corp.*, 158 W. Va. 516, 519 (1975).

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations omitted).
For a finding of predominance, the "claims must depend on a common contention"
that "is capable of classwide resolution – which means that determination of its truth
or falsity will resolve an issue that is central to the validity of each one of the claims
in one stroke." *Wal-Mart Stores Inc., v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  Here,
the predominance requirement is easily met.  *See Amchem Prods., Inc.*, 521 U.S. at
623 ("Predominance is a test readily met in certain cases alleging consumer …
fraud.").

### 1.    Common Questions of Fact Predominate

Common questions of fact predominate because Plaintiff's and the class
members' claims each arise from the same deep whitening misrepresentations. *See
e.g.*, Class Cert. Stip., Dkt. No. 45, ¶ 5 (stating that, during the class period, OW
labeling included a "Deeply Whiten" claim); ¶¶ 9-10 (stating that, during the class
period, OW Platinum labeling included a "Deeply Whitens" claim).  The
determination of the following common questions of fact will resolve issues central
to the validity of Plaintiff's and the class members' claims in a single stroke: (i)
whether Colgate represented that users could deeply whiten their teeth by using
Optic White; (ii) whether Colgate's deep whitening representations were material to
class members' decision to purchase Optic White; (iii) whether Colgate's
representations were false and misleading because Optic White does not go beyond
surface stain removal, and does not deeply whiten teeth; and (iv) whether class
members were damaged by purchasing Optic White based on false and misleading
whitening representations.  Each of these questions can be answered with common
evidence as described above.  *See supra* § II.A-II.C.  Accordingly, "the common,
aggregation-enabling, issues in the case are more prevalent" than any "non-common,
aggregation-defeating, individual issues." *See Tyson Foods*, 136 S. Ct. at 1045.

### 2.   Common Questions of Law Predominate for a Ten-Jurisdiction Express Warranty Class

Common questions of law predominate for the members of the ten-jurisdiction breach of express warranty class because Plaintiff excluded state express warranty laws that differed from California law in any material way.  *See supra* § III; *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022-23 (9th Cir. 1998) (finding by the Ninth Circuit that "idiosyncratic differences" between state laws do not "predominate over shared claims").  As discussed above, common questions of law for a ten-state class include a requirement that a warranty label form part of the basis of the bargain, a requirement that representations be material to reasonable consumers, and a rebuttable presumption that the representations formed part of the basis of the bargain.  *See supra* § III; *Astiana*, 291 F.R.D. at 505 (finding that common issues predominated for claims of breach of express warranties on labels); *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576, 581 (C.D. Cal. 2011).  Additionally, class-wide damages can be tied to Plaintiff's theory of liability such that "a common nucleus of potential legal remedies dominates this litigation."  *See Hanlon*, 150 F.3d at 1023; *supra* § II.C (showing compliance with *Comcast*).

### 3.   Common Questions of Law Predominate Under California Consumer Protection Claims

Common questions of law also predominate with respect to Plaintiff's CLRA, UCL, and FAL claims brought on behalf of herself and California class members.  The CLRA makes it unlawful to use "unfair methods of competition and unfair or deceptive acts or practices" in the sale of goods or services to a consumer.  Cal. Civ. Code § 1770.  Under the CLRA, while individual reliance by the Plaintiff is required, reliance may be inferred as to the entire class if the representations were objectively material.  *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145, 157 (2010); *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002).  Evidence of the materiality of the "Deeply Whiten(s)" statements is manifest.  *See supra* § II.A; *Kwikset*, 51 Cal.4th at 332-33.

Under the "fraudulent" prong of the UCL and FAL, Plaintiff must demonstrate her individual reliance on Colgate's labeling claims resulted in injury in fact, *In re Tobacco II Cases*, 46 Cal.4th 298, 325-27 (2009), and show that "members of the public are likely to be deceived" by Colgate's misrepresentations, which is an objective test subject to common proof. *See Williams v. Gerber Products Co.,* 552 F.3d, 934, 938 (9th Cir. 2008). For class members, relief "is available without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Tobacco II*, 46 Cal. 4th at 320). Plaintiff can prove that she relied on Colgate's false and misleading representations and that those representations were objectively material to the class. *See* Dean Decl. at ¶¶ 4-5; *supra* § II.A.

Under the "unfair" prong of the UCL, "[t]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim ..." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (2002) (same). Under the "unlawful prong," unlawful business acts include "any practices forbidden by law," which includes Colgate's breach of express warranties and violation of the CLRA. *See Rush v. Nutrex Research, Inc.*, 2012 WL 2196144, at *8 (N.D. Cal. June 13, 2012); *Valazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Here, again, these are inquiries common to all California class members. The harm resulting from the purchase of the misrepresented products is not unique to Plaintiff.

## C.    Typicality

Plaintiff satisfies the typicality requirement of Rule 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The

typicality requirement is "permissive" and requires only that the representative's claims are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

In this case, Plaintiff's claims arise from the same material facts – the sale of Optic White based on misleading and inaccurate "Deeply Whiten(s)" representations – and are identical to those of the Class members.  In 2014, Plaintiff purchased Optic White numerous times from Walgreens and Target stores in Fontana, California.  *See* Dean Decl. ¶ 3.  Common evidence shows that Plaintiff was exposed to the same misleading "Deeply Whiten(s)" representations as the Class because Colgate made "Deeply Whiten(s)" misrepresentations on the labels of all of the Optic White products at issue.  *See* Dean Decl. ¶ 5 (stating that she purchased Optic White based on statements made on the product packaging); Dean Decl. Ex. A.  Thus, the typicality requirement is satisfied because other Class "members have the same or similar injury" and the "action is based on conduct which is not unique to the named [Plaintiff]."  *See Wolin v. Jaguar Land Rover N. Amer., LLC*, 617 F.3d 1168, 1174-75 (9th Cir. 2010).

### D.    Adequacy of Representation

The "due process touchstone of adequacy and fairness of representation must be judged in light of … the alternatives to class representation available." *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Rule 23 "requires adequate representation.  The alternative may be none at all."  *Id.* at n.26.  Here, Plaintiff is an adequate representative because she is a member of the Class she seeks to represent, she shares the same claims and interests in obtaining relief as all other Class members, and she has no conflicts of interest with other Class members. *See, e.g.*, *Brown v. Brewer*, 2009 WL 1574556, at *4-*5 (C.D. Cal. May 29, 2009).

Plaintiff intends to fairly and adequately represent the interests of the Class. Dean Decl. at ¶ 10.  Plaintiff's individual and class claims arise from Colgate's same

misconduct of falsely labeling and advertising Optic White. *Id.* at ¶¶ 4-7.  Plaintiff seeks remedies equally applicable and beneficial to the Class. *Id.* at ¶ 10.  Plaintiff has no conflicts of interest with the proposed Class and has demonstrated her adequacy through her participation thus far in litigation.  Plaintiff has searched for documents relevant to this action, responded to Colgate's discovery demands, reviewed documents filed on her behalf, and further understands that she may be asked to testify at a deposition and ultimately at a trial in this case. *Id.* at ¶ 9. Further, given the expense and complexity of this litigation, the alternative to representation by Plaintiff is no representation at all.  Plaintiff is clearly an adequate representative.

Rule 23(g) also requires that a district court appoint class counsel for any class that is certified. *See* Fed. R. Civ. P. 23(g)(1)(A).  Plaintiff is represented in this case by Bursor & Fisher, P.A. and Levi & Korsinsky, LLP, prominent law firms with extensive experience in complex and class action litigation. *See* Exs. 109-110 (firm resumes).  Neither firm has any conflicts of interest with the Class.  Persinger Decl. ¶ 28.  Both firms intend to continue to vigorously prosecute this action. *Id.*  These facts demonstrate that proposed Class counsel will fairly and adequately represent the interests of the Class. *See e.g.*, *Melgar v. Zicam*, 2014 WL 5486676, at *2 (E.D. Cal. Oct. 29, 2014); *Forcellati*, 2014 WL 1410264, at *11.

## V.  SUPERIORITY

Absent a class action most class members in this case will not recover at all. *See, e.g.*, *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").  As explained by the Ninth Circuit:

> [The superiority] [d]etermination necessarily involves a comparative
> evaluation of the alternative mechanisms of dispute resolution.  In this
> instance, the alternative methods of resolution are individual claims
> for a small amount of consequential damages …. Litigation costs

would dwarf potential recovery.  In this sense, the proposed class action is paradigmatic.  A fair examination of alternatives can only result in the apodictic conclusion that class action is clearly the preferred procedure in this case.

*Hanlon*, 150 F.3d at 1023; *see also Blackie*, 524 F.2d at n. 26.  Similarly, the Supreme Court emphasized that the policy "at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive" for individuals to bring claims.  *Amchem Prods. Inc.*, 521 U.S. at 617.  Further, "[c]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged."  *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999).

Here, a tube of Optic White costs between $3-$4.  *See e.g.*, Colgate's Responses to Interrogatory No. 4, Ex. 111.  Such a small recovery does not provide an incentive for consumers to bring individual claims.  *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *17 (C.D. Cal. July 1, 2013) ("[G]iven that Serum sells for less than $10.00 per bottle, 'there is no realistic alternative to a class action'" (citing *Weiner v. Dannon Co., Inc.*, 255 F.R.D. 658, 672 (C.D. Cal. 2009)).  Because it would not be economically feasible to obtain relief for each class member given the small size of each class member's claim and the alternative for class members is no recovery, a class action is unquestionably the superior method of adjudication.  *See e.g.*, *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *11 (S.D. Cal. Jul. 30, 2013); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289-90 (C.D. Cal. 2011); *Astiana*, 291 F.R.D. at 506-07.

## A.    The Class Is Ascertainable

Although not mentioned in Rule 23(a), a party moving for class certification must also demonstrate that the class is ascertainable.  *McCrary*, 2014 WL 1779243, at *3.  As this Court has recognized, courts in the Ninth Circuit have repeatedly held that a class is ascertainable if the class definition includes objective criteria by which consumers can determine if they are members of the class.  *Id.* at *7-*9; *see also e.g.*,

*Melgar*, 2016 WL 1267870, at *5; *Forcellati*, 2014 WL 1410264, at *5.  This Court has further explained that: "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary*, 2014 WL 1779243 at *8 (citations omitted).  Accordingly, courts in this circuit routinely certify classes for low-cost consumer products where purchasers are unlikely to have retained receipts.  *See e.g. id.*; *Lilly*, 308 F.R.D. at 238 ("[I]t is precisely in circumstances [where few people retain receipts], where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits.").[16]  For example, this Court certified a class of supplement purchasers because "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase," and a class member "would have sufficient information to determine whether he or she was an Elations customer who viewed the specified label during the stated time period." *McCrary*, 2014 WL 1779243, at *8.

Here, Plaintiff has precisely defined the proposed Class based on objective criteria.  The proposed class includes individuals who purchased Optic White labeled with the representations at issue, in ten jurisdictions, after October 1, 2013.  The proposed class also includes individuals who purchased Optic White Platinum labeled with the representations at issue, in ten jurisdictions, after February 1, 2014.  Plaintiff has specifically defined the class period to conform to the dates when Colgate released the Optic White labels with the "Deeply Whiten(s)" claims at issue.  *See* Class Cert. Stip., Dkt. No. 45, ¶¶ 1-2, 5, 9-10.  Thus, putative class members

---

[16] *See also e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting that if proof of class membership was required for certification, "there would be no such thing as a consumer class action"); *Astiana*, 291 F.R.D. at 500; *Forcellati*, 2014 WL 1410264, at *5.

have sufficient information to determine if he or she purchased the Optic White toothpaste at issue during the stated time period.  As such, the Class is ascertainable.

While "the fact that particular persons may make false claims of membership does not invalidate the objective criteria" required for a finding of ascertainability, proper notice and claims administration procedures will operate to minimize any consumer confusion or fraud.  *See McCrary*, 2014 WL 1779243, at *8 ("sufficient notice can cure confusion"); *Forcellati*, 2014 WL 1410264, at *7 (explaining that claims administrators "screen[] out potential bad claims" through a thorough fraud analysis during the claims administration process); *id* at n.3.

Moreover, under Rule 23, individual notice must only be provided to class members "who can be identified through reasonable effort."  Rule 23(c) also implicitly assumes that some class members cannot be identified.  *See* Manual For Complex Litigation, Fourth § 21.311, at 292 (Fed. Jud. Center 2004) ("[I]f no records were kept of sales … publication notice may be necessary.").  Thus, in cases where a defendant cannot directly identify class members, courts in the Ninth Circuit hold that other types of notice are administratively feasible and sufficient.  *See, e.g.*, *Galvan v. KDI Distribution Inc.*, 2011 WL 5116585, at *4 (C.D. Cal. Oct. 25, 2011).

Here, Plaintiff will propose a comprehensive notice plan consisting of (1) internet notice and/or publication notice; and (2) direct notice where possible.  While Colgate cannot directly identify most class members, Colgate keeps records of the retailers it sells its products to.  *See e.g.*, Gallagher Dep. 45:14-46:14.  Colgate's retailers can identify consumers that purchased Optic White so that direct notice can be sent to class members.  *See, e.g.*, Exs. 112-117 (declarations from retailers).  In short, administration of a class action would be straightforward and manageable.

## VI.  THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED

Alternatively, the Court should certify an injunctive relief class.  Rule 23(b)(2) permits certification of an injunctive relief class where the prerequisites of Rule

23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[17]

Certification under Rule 23(b)(2) is appropriate in this case. The Court has already determined that Plaintiff has standing to bring her claim for injunctive relief. *See Dean*, 2015 WL 3999313, at *8 (following *Ries*, 287 F.R.D. at 533 and *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011)). Colgate has acted on grounds generally applicable to the class by including "Deeply Whiten(s)" claims on labels and by refusing to remove those claims. *See* Ex. 118 at P&G 799 (showing Colgate's refusal to remove the "Deeply Whiten(s)" claims). Plaintiff's request for injunctive relief can be satisfied "with indivisible equitable relief that benefits all class members at once," by requiring that Colgate stop making the false and misleading statements. *Ries*, 287 F.R.D. at 541. This "case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2)" because Plaintiff seeks relief from false claims, and removal of the claims would benefit all class members at once. *See id.*; *Lanovaz v. Twinings N. Am. Inc.*, 2014 WL 1652338, at *4-*5 (N.D. Cal. Apr. 24, 2014); *Lilly v. Jamba Juice Company*, 2015 WL 1248027, at *3-*5 (N.D. Cal. Mar. 18, 2015).

## VII.  CONCLUSION

Plaintiff requests that the Court certify the Class defined herein, appoint her as Class Representative, and Bursor & Fisher and Levi & Korsinsky as Class Counsel.

---

[17] Certification under Rule 23(b)(2) does not require predominance, superiority, or ascertainability. *See Ries*, 287 F.R.D. at 541; *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).

Dated:  April 29, 2016  **BURSOR & FISHER, P.A.**

        By:_____*/s/ Annick M. Persinger*_____
           Annick M. Persinger

        L. Timothy Fisher (State Bar No. 191626)
        Annick M. Persinger (State Bar No. 272996)
        Yeremey O. Krivoshey (State Bar No.295032)
        1990 North California Blvd., Suite 940
        Walnut Creek, CA  94596
        Telephone: (925) 300-4455
        Facsimile: (925) 407-2700
        Email: ltfisher@bursor.com
           apersinger@bursor.com
           ykrivoshey@bursor.com

        **LEVI & KORSINSKY, LLP**
        Shane T. Rowley (*pro hac vice*)
        Courtney E. Maccarone (*pro hac vice*)
        30 Broad Street, 24th Floor
        New York, New York 10004
        Telephone: (212) 363-7500
        Facsimile: (866) 367-6510
        Email: srowley@zlk.com
        cmaccarone@zlk.com

        **THE MARLBOROUGH LAW FIRM, P.C.**
        Christopher Marlborough (State Bar No. 298219)
        445 Broad Hollow Road, Suite 400
        Melville, New York 11747
        Telephone: (212) 991-8960
        Facsimile: (212) 991-8952
        chris@marlboroughlawfirm.com

        **FINKELSTEIN, BLANKINSHIP,**
        **FREI-PEARSON & GARBER, LLP**
        Todd S. Garber (*pro hac* filed)
        1311 Mamaroneck Avenue, Suite 220
        White Plains, New York 10605
        Telephone: (914) 298-3283
        Facsimile: (914) 824-1561
        Email: tgarber@fbfglaw.com

        *Counsel for Plaintiff*