**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

*Counsel for Plaintiff*
*(additional counsel appear on signature page)*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JACQUELINE DEAN, on Behalf of Herself and all Others Similarly Situated,

Plaintiff,

v.

COLGATE-PALMOLIVE CO.

Defendant.

Case No. 5:15-CV-00107-JGB(DTBx)

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Date: September 12, 2016
Time: 9:00 a.m.
Courtroom 1

Hon. Jesus G. Bernal

Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiff Jacqueline Dean requests that the Court take judicial notice of the attached Exhibit A, which is a true and correct copy of Judge John A. Kronstadt's Order Re: Plaintiff's Motion for Class Certification in *Morales, et al. v. Kraft Foods Group, Inc., et al.*, Case No. 14-cv-04387, Dkt. No. 78 (C.D. Cal. Jun. 23, 2015). Under Rule 201, this Court may take judicial notice of documents filed in any federal or state court, including the document attached hereto as Exhibit A.

Dated: April 29, 2016

**BURSOR & FISHER, P.A.**

By: */s/ Annick M. Persinger*
Annick M. Persinger

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com

**LEVI & KORSINSKY, LLP**
Shane T. Rowley (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510
Email: srowley@zlk.com
cmaccarone@zlk.com

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (State Bar No. 298219)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952
chris@marlboroughlawfirm.com

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
Todd S. Garber (*pro hac* filed)
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Telephone: (914) 298-3283
Facsimile: (914) 824-1561
Email: tgarber@fbfglaw.com

*Counsel for Plaintiff*

**EXHIBIT A**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DKT. 47)**

## I. Introduction

On May 7, 2014, Claudia Morales and Mocha Gunaratna (collectively, "Plaintiffs") brought this action in the Los Angeles Superior Court against Kraft Foods Group, Inc. ("Kraft") and DOES 1-100 (collectively, "Defendants"). Plaintiffs contend that Kraft's use of the term "natural cheese" to market and sell a product that contains artificial coloring is misleading. Complaint, Dkt. 1, Ex. A. Kraft removed the matter on June 6, 2014. Notice of Removal, Dkt. 1.

On November 7, 2014, the parties stipulated to the filing of a Second Amended Complaint ("SAC"). Dkt. 38. Plaintiffs filed the SAC on November 14, 2014. Dkt. 40. The SAC advances three causes of action: (1) false and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) false and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* SAC, Dkt. 40.

On December 3, 2014, Plaintiffs moved for class certification. Motion to Certify Class Action ("Motion"), Dkt. 47. Kraft opposed the Motion (Dkt. 56) and Plaintiffs replied (Dkt. 60). The declaration of Dr. Anand V. Bodapati ("Bodapati") was filed with the reply. Dkt. 60-1. Kraft filed an ex parte application (Dkt. 61) in which it sought to have the declaration stricken, or in the alternative, to have the hearing on the Motion continued to allow time for Kraft to depose Bodapati because he had not previously been identified as a witness. The ex parte application was granted in part on February 25, 2015. Dkt. 63. The hearing for Plaintiffs' Motion was continued from March 2, 2015 to April 6, 2015. *Id.* Kraft was given the opportunity to file a response to Bodapati's declaration by March 25, 2015. *Id.* Kraft filed a response in accordance with the Order. Dkt. 65. Kraft did not depose Bodapati. *Id.*

A hearing on the Motion was held on April 6, 2015, at the conclusion of which the matter was taken under submission. Dkt. 7. At that time, Plaintiffs' counsel was directed to make a supplemental filing by April 8, 2015, as to certain sales data that was addressed during the hearing. *Id.* Plaintiffs' counsel made a timely

Case 5:14-cv-01381-JGB-RAO Document 50 Filed 06/29/15 Page 6 of 20 Page ID #:1900

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

filing (Dkt. 71) to which Kraft responded (Dkt. 72). Plaintiffs then objected to the response. Dkt. 73.[1]

For the reasons stated in this Order, Plaintiffs' Motion is **GRANTED IN PART**.

## II. Factual Background

The SAC alleges that Plaintiffs were misled by the use of the term "natural cheese" in connection with their purchase of Kraft's "Natural Cheese Fat Free Shredded Fat Free Cheddar Cheese" (the "Product"). SAC ¶¶ 12-20. They allege that they would not have made such purchases had they known the Product contained artificial coloring. *Id.* They seek to certify a class of all similarly situated individuals, "who purchased the Product in the State of California for personal use and not for resale during the time period of May 7, 2010 through the present." *Id.* ¶ 21.

Plaintiffs estimate that the proposed class includes "thousands of persons throughout the State of California." *Id.* ¶ 22. The SAC seeks restitution to all class members in a total amount that will not exceed $5,000,000, as well as declaratory and injunctive relief. SAC, Prayer for Relief.

## III. Analysis

### A. Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The first step in establishing the propriety of class certification requires that a putative class representative show that the proposed class meets each of the prerequisites of Rule 23(a). *Wal-Mart*, 131 S. Ct. at 2551; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original).

---

[1] Kraft's response addressed certain matters presented in Plaintiffs' submission that allegedly went beyond what was to be addressed under the instruction given during the April 6, 2015 hearing. A review of Plaintiffs' response shows that it did not include any additional information. Accordingly, Kraft's objection is **OVERRULED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

If these four prerequisites are met, the analysis proceeds to a consideration of whether the proposed class meets an applicable requirement of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs rely on Rule 23(b)(3), which provides, in relevant part, that a class proceeding "may be maintained . . . if . . . questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

B. Whether the requirements of Fed. R. Civ. P. 23(a) Have Been Met

1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Kraft does not dispute that this requirement has been met. The Declaration of Chris Hjorth ("Hjorth Decl."), a Senior Director for Kraft, which was attached to Kraft's Notice of Removal, supports a finding of numerosity. Decl. of Paul D. Stevens ("Stevens Decl."), Dkt. 47-3, Ex. 13; *see also* Hjorth Decl., Dkt. 2. Hjorth declared that sales of the Product in California from May 2010 through May 2014 generated revenues of approximately $4.7 million. Hjorth Decl. ¶ 4.

Plaintiffs claim that the average retail price per unit during this time period was approximately $3.89. Therefore, they contend that there were approximately 1.2 million sales to consumers. Although there is no evidence that each of these purchases was by a unique individual, this data nonetheless confirms that it would not be practical to join in a single action all of those who purchased the product in California between May 2010 and the present (the "Class Period"). Thus, it is reasonable to conclude that there are at least thousands of prospective class members. *See, e.g.*, *McCrary v. Elations Co., LLC*, No. ED-CV-13-00242-JGB-OPx, 2014 WL 1779243, at *9 (C.D. Cal. Jan. 13, 2014) (numerosity requirement met based on a showing that the defendant "shipped 615,623" units of the consumer product to California, making it "reasonable to estimate that there are thousands of potential class members in California"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) ("Although the parties have not identified the number of possible class members, the court infers from the allegation that Blue Sky sold over $20 million of product, or over 500,000 cases per year, that there are numerous purchasers who are potential class members so as to satisfy the numerosity requirement").

For these reasons, the numerosity requirement is satisfied

2. Commonality

a) Legal Standard

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks removed). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution--which means that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 2556 (internal markings omitted).

b) Application

Plaintiffs contend that the following common questions are presented as to all members of the proposed class:

1. Whether the packaging of the Product is unlawful, unfair, deceptive or misleading to reasonable consumers under the UCL, FAL and CLRA;
2. Whether labeling the Product as "natural cheese" is deceptive;
3. Whether, based on the use of the term "natural," class members had a reasonable expectation that the Product did not contain artificial coloring;
4. Whether Defendants knew or should have known that the representations as to a "natural" product were false; and
5. Whether Defendants misrepresented the characteristics, benefits, uses or quantities of the Product.

Motion, Dkt. 47-1 at 19 (internal, p.12). Plaintiffs argue that the packaging of the Product was the same throughout the Class Period. Stevens Decl., Dkt. 47-3, Ex. 6 at 14. As a result, they argue that the claims of all members of the potential class "stem from the same source." Motion, Dkt. 47-1 at 19 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Kraft has not presented a substantive response to the claim as to common issues. Instead, it focuses on a claim that there is no showing of predominance as required by Fed. R. Civ. P. 23(b)(3). That issue is addressed in Section III. C, *infra.*

There are central questions common to each of the five bases for commonality that Plaintiffs have advanced. First, whether the use of the term "natural cheese" would mislead a reasonable consumer. Second, whether Kraft knew or should have known that its labeling of the Product was misleading. This is sufficient to meet the commonality requirement. *Wal-Mart*, 131 S. Ct. at 2556.

3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representative claims "need not be substantially identical." *Id.*

Here, each of the named Plaintiffs alleges that she purchased the Product based on the understanding that arose from the label "natural cheese." Thus, each believed that meant the Product did not contain artificial ingredients, including artificial coloring. SAC ¶¶ 12-20. Kraft has not disputed the arguments as

Page **4** of **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

to typicality.

For these reasons, this element of Rule 23(a) has been established.

4. Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, there is no evidence that Plaintiffs have a conflict of interest as to any other class member. Nor is there any evidence that Plaintiffs' counsel will not prosecute the action vigorously on behalf of the proposed class. Kraft does not dispute that this element of Rule 23 has been satisfied.

For these reasons, this requirement has been established.

C. Whether the Requirements of Fed. R. Civ. P. 23(b)(3) Have Been Met

1. Legal Standard

Fed. R. Civ. P. 23(b)(3) provides that a class may be certified if a "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are to be considered in making this determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Fed. R. Civ. P. 23(b)(3) applies when "class-action treatment is not as clearly called for as [(b)(1) and (b)(2)], but it may nevertheless be convenient and desirable depending upon the particular facts." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment. It "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* "In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." *Id.* "On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *Id.* The "focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

Cir. 2011) (internal quotation marks omitted).

2. Application

Plaintiffs argue that common issues arise from Kraft's use of the term "natural cheese" to describe a product with artificial color, and that they predominate over any individual ones. In support of this position as to the claims under Cal. Bus. & Prof. Code §§ 17200 and 17500, Plaintiffs rely on *In re Tobacco II Cases*, 46 Cal.4th 298, 324 (2009). With respect to their CLRA claim, they rely on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). Kraft argues that individual issues predominate.

a) Predominance: Plaintiffs' Cal. Bus. & Prof. Code §§ 17200 and 17500 Claims

An individual may bring an action under Cal. Bus. & Prof. Code § 17204 when he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* However, section 17204 does not require proof that each class member suffered actual injury that was caused by defendant's unfair business practice. *In re Tobacco*, 46 Cal.4th at 324 (Section 17204 "was not intended to, and does not, impose section 17204's standing requirements on absent class members in a UCL class action where class requirements have otherwise been found to exist"). Based on these principles, Plaintiffs argue that they need only demonstrate that a reasonable consumer would have been misled by Kraft's use of the term "natural cheese." *See Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 513 (2003). From this they contend that common issues predominate as to this claim.

Kraft argues that Plaintiffs cannot demonstrate class-wide reliance on the term "natural cheese." They argue that many members of the proposed class did not purchase the Product because of the "natural cheese" designation, or because they interpreted it to mean that the Product did not contain any artificial ingredients. Instead, Kraft contends that many consumers purchased the Product for other reasons, including the following:

- Some consumers believe that "natural cheese" refers to the process by which the cheese is made -- *i.e.*, from milk and not from other cheeses, and not to the ingredients present in the cheese.[2]

---

[2] Kraft offers evidence in support of these arguments. This includes certain publications that support the view that consumers interpret the term "natural cheese" to mean cheese made from milk and not from other cheeses. *See, e.g.*, Midwest Research Institute, Emission Factor Documentation for AP-42 Section 9.6.1: Natural and Processed Cheese (1997), Dkt. 56-2, Ex. 1; Agricultural Marketing Service, How to Buy Cheese (1995), Dkt. 56-3, Ex. 2; California Milk Advisory Board, Cheese (2015), Dkt. 56-4, Ex. 3; Industry & Trade Summary. Dairy Produce, 1992 I.T.C. LEXIS 103 (1992), Dkt. 56-5, Ex. 4; Nine Natural Cheeses, 48 Fed. Reg. 2736-01 (21 C.F.R. pt. 133), Dkt. 56-6, Ex. 5; Cal. Code Regs. tit. 3, § 416.5 (2014) (Pasteurized Process Cheese Product), Dkt. 56-7, Ex. 6; 7 C.F.R. § 1170.10, Dkt. 56-8, Ex. 7 (Storage Reporting Specifications); Kraft, Cheese & Dairy Overview, Dkt. 56-9, Ex. 8 (filed under seal); Kraft, Fundamentals of Cheese Making, Dkt. 56-10, Ex. 9 (filed under seal); Kraft, Process Cheese, Dkt. 56-11, Ex. 10 (filed under seal); Kraft, Photographs of Packaged Shredded Cheese Products (Dec. 2014), Dkt. 56-26, Ex. 25.

Page **6** of **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

- Because other companies sell products labeled "natural cheese," Kraft's products are not unique or selected on this basis.
- Kraft's internal studies suggest that most consumers purchase the Product because it is fat free.
- In their depositions, Plaintiffs were unable to identify a different fat free shredded cheese product. Dep. of Claudia Morales ("Morales Dep."), Dkt. 56-19, Ex. 18 at 72:6-9; Dep. of Mocha Gunaratna ("Gunaratna Dep."), Dkt. 56-20, Ex. 19 at 39:8-23.
- Consumers are particularly price sensitive and will purchase products because they are on sale.
- Consumers purchase Kraft products because they are loyal to the Kraft brand.

Each of these arguments goes to the merits of the claims in the SAC. They concern whether a reasonable consumer is likely to be misled by the use of the term "natural cheese" or whether the presence of the term is material to the decision by a consumer about what cheese to purchase. However, they do not apply to whether predominance has been shown as to the claims under §§ 17200 and 17500. Under these statutes, Plaintiffs are not required to demonstrate that each class member detrimentally relied on Kraft's use of the term "natural cheese." *In re Tobacco*, 46 Cal.4th at 324. Instead, they must show that Plaintiffs themselves relied on the use of the term and that a reasonable consumer would have done the same. As stated in their declarations, each named Plaintiff claims to have relied on the alleged misrepresentation. Morales Decl. ¶¶ 5-6; Gunaratna Dep. ¶¶ 5-6. From this, as well as other evidence that may be developed and offered in the course of the pre-trial and trial processes, they can argue that a reasonable consumer is, therefore, likely to be confused. This is a common issue amenable to resolution on a class-wide basis through common proof such as consumer surveys.

For similar reasons, Kraft's reliance on *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622 (2010) is unpersuasive. There, the plaintiff sought to challenge an advertising campaign that suggested that the use of a mouthwash had the same benefits as the use of dental floss. *Id.* at 625. However, not all product labels, advertising and marketing materials made this comparison. *Id.* at 631-32. Accordingly, many consumers were not exposed to the allegedly misleading statements. *Id.* Therefore, *Pfizer* concluded that a class of all consumers who had purchased Listerine was overbroad. *Id.* at 632-33. Plaintiffs here have alleged that every package of the Product sold in California included the term "natural cheese." There is no evidence that the labeling used on the Product varied during the Class Period. Accordingly, the question whether it is likely a reasonable consumer would be confused by the term "natural cheese," is amenable to resolution on a class-wide basis.

b) Predominance: Plaintiffs' CLRA Claim

Cal. Civ. Code § 1780 requires that each individual plaintiff suffer actual harm in order to establish a claim. *See also Stearns*, 655 F.3d at 1022. Here, this means that it must be shown that each class member relied on the alleged misrepresentations when he or she purchased the product. *Id.* However, such reliance may be inferred as to absent class members if it is found that a "material misrepresentation" has been made. *Id.* Materiality is established if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]" *Id.* "[S]uch materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* (quoting *In*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

*re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010)). If an alleged misrepresentation is not material "as to all class members," then reliance would "vary from consumer to consumer" and certification should not be granted. *Id.* (internal quotation marks omitted).

Kraft argues that Plaintiffs have not demonstrated that the issue of materiality is amenable to resolution on a class-wide basis. As noted, it argues that there are many reasons that a consumer could have decided to purchase the Product that are entirely separate from the use of the term "natural cheese." These include brand loyalty, a belief that "natural cheese" refers to the cheese-making process and that the Product is fat free. Plaintiffs argue that materiality may be established by demonstrating that a reasonable consumer would want to know that, although a product labeled as "natural cheese," it in fact contains artificial coloring. Therefore, they argue that they need only show that the class members were subjected to uniform misrepresentations that would have been material to a reasonable consumer.

To show materiality on a class-wide basis, Plaintiffs must demonstrate that a reasonable person would rely on, and consider significant, Kraft's use of the term "natural cheese." This is substantially similar to the inquiry whether it is likely that a reasonable consumer would be confused by the term "natural cheese." Viewed in that light, the issue of materiality in this proposed class proceeding will parallel the manner in which the issue would be presented in a series of individual cases. If the class is certified, Kraft may raise all appropriate fact-based arguments in an effort to rebut the claim that a reasonable consumer would not find material the use of the term "natural cheese."

For these reasons, individual issues do not predominate over common ones.

c) Predominance: Calculation of Alleged Damages

(1) <u>Legal Standard</u>

(a) Damages Theory Must Be Consistent with Liability on a Class-Wide Basis

Where damages are sought on a class-wide basis, it must be shown that their calculation is subject to common proof. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Such calculations "need not be exact." *Id.* However, at the class-certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case . . . [and] courts must conduct a rigorous analysis to determine whether that is so." *Id.* at 1433 (internal quotation marks omitted).[3] However, "damages calculations

[3] In *Comcast*, plaintiffs were cable subscribers who claimed to have been damaged by Comcast's antitrust violations. *Id.* at 1430. During the class certification process, the plaintiffs offered four theories for establishing antitrust injury. *Id.* at 1431. The district court accepted only one of them, *i.e.*, that Comcast's anticompetitive conduct deterred competitors that built competing cable infrastructure from entering the relevant market. This, in turn, allegedly allowed Comcast to charge higher rates due to the absence of competition. *Id.* The damages model presented by plaintiffs relied on the opinion of an expert who used a regression analysis to compare actual cable prices with hypothetical ones that would have been charged absent the alleged anticompetitive activities of Comcast. *Id.* However, this theory was not designed to isolate "damages resulting from any one theory of antitrust

Casse 5:2154-cv-004387-JCAB-RAVO Document 578 Filed 06/23/15 Page 93 of 120 Page ID #:12187

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

alone cannot defeat certification." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). Indeed, even if individual issues predominate on damages calculations, that alone cannot defeat certification. *See id.*; *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010).

*Levya*, which was a wage and hour class action brought by 500 employees, applied *Comcast* to require plaintiffs to prove that the alleged damages suffered were caused by the alleged injury. *Levya*, 716 F.3d at 514. In *Levya* the district court found that the requirements of Fed. R. Civ. P. 23(a) were met. *Id.* at 512. However, it found that the requirements of Fed. R. Civ. P. 23(b)(3) were not satisfied because individualized calculations of damages as to each of the 500 employees would be necessary. *Id.* at 512-13. The Ninth Circuit reversed. *Id.* at 513. It held that *Comcast* determined that the damages expert there had failed to "isolate damages resulting from any one theory of antitrust impact." *Id.* (internal quotation marks omitted). In contrast, the plaintiffs in *Levya* offered testimony that the amount of damages suffered by each class member could be determined by using the records that applied to each of them. *Id.* Accordingly, plaintiffs' proposed damages calculations met the requirements of Fed. R. Civ. P. 23(b)(3).

(b) What Proof Must Be Offered at Class Certification Stage

"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). A plaintiff must support a damages theory with evidence, not mere allegations. *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460-61 (S.D. Cal. 2014). Thus, "[e]xpert testimony may be necessary" in consumer class action cases to "establish the price inflation attributable to the challenged practice." *Id.* at 460.

When discovery has not yet closed, it may be appropriate to certify a class based on proposed damages modeling and subject to possible decertification after the close of discovery. *E.g.*, *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *18-20 (N.D. Cal. May 30, 2014) ("*Brazil I*") (accepting a regression model for certification purposes although the analysis was not yet complete); *Astiana*, 291 F.R.D. at 506 (accepting plaintiffs' proposal to calculate restitutionary damages using sales information maintained by the defendant); *Guido v. L'Oréal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *11-14 (C.D. Cal. July 24, 2014) (accepting a model that would use a combination of marketplace research and experimental analyses to determine damages on a class-wide basis although the analysis had not yet been performed).

(2) Plaintiffs' Damages Theory

---

impact." *Id.* Because only one of the four antitrust theories advanced by plaintiffs had been approved by the district court, the model was deficient; it was not tailored to that particular antitrust conduct. *Id.* Therefore, the class had been improperly certified. *Id.* at 1432-33. If plaintiffs succeeded on the merits at trial, they would only be entitled to damages available under the single antirust theory certified by the district court. *Id.* at 1433. For these reasons, the plaintiffs failed to demonstrate that damages were susceptible to calculation on a class-wide basis. *Id.* at 1433-35.

Page **9** of **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

Plaintiffs argue that damages can readily be calculated on a class-wide basis. Thus, they argue that the presence of an artificial color reduced the retail value of the Product. Dkt. 60 at 14. They then claim that each class member "was financially harmed by the exact same amount per package of the Product." *Id.* The declaration of Dr. Bodapati is offered to support these arguments. Dkt. 60-1. Bodapati is a highly-credentialed professor of marketing at the UCLA Anderson School of Management. *Id.* ¶ 1*.* His academic work focusses on marketing, consumer psychology, consumer behavior and related statistical methodology. *Id.*

Bodapati declares that the premium associated with using the term "natural cheese" can be calculated without individualized inquiries. Bodapati Decl. ¶ 9. He relies on two sources of data: (1) marketplace datasets;[4] and (2) conjoint experiment datasets.[5] *Id.* If these datasets contain the "appropriate data," choice models can be used to determine the premium associated with the term "natural cheese" and what price adjustment would result if consumers knew it contained artificial color. *Id.* ¶¶ 10-11. He opines that these choice models are based on the theory that consumers "make purchase decisions by trading off the value they expect to obtain from the consumption of the product and the price they have to pay to obtain such a product." *Id.* ¶ 16. He states that mathematical functions can replicate this process. *Id.* ¶¶ 17-18. The strength of the calculations is dependent on the data sources available. *Id.* ¶¶ 18-19. Bodapati declares that a marketplace dataset, which is gathered by companies such as Symphony IRI and Nielsen, is useful only if it contains information on the particular attributes of the subject product. *Id.* ¶ 18.

Conjoint experiment analysis uses consumer surveys to determine how consumers would respond to hypothetical products that are not actually in the market. *Id.* ¶ 19. He acknowledges that there are possible shortcomings with this approach because the results of such analyses do not represent "actual purchases by actual consumers." *Id.* ¶ 20. He states that there are methods to address that issue, but does not describe them. *Cf. id.*

Kraft argues that this analysis does not satisfy the requirements of Fed. R. Civ. P. 23(b)(3). First, it contends that Bodapati's opinion is based on theory not facts. Bodapati does not declare that the necessary data exists. Further, Bodapati has not designed the actual survey or experiment necessary to analyze such data. Second, Kraft suggests that, even if the data were available, it would not be sufficient to take into account and isolate the values of other features of the Product, including that it is fat free. Third, Kraft argues that conjoint experiment analysis should not be used as a method to calculate damages because it is based on hypothetical products that do not exist in the market. Finally, Kraft argues that the value assigned by each consumer varies.

Plaintiffs responded to these positions. First, they point to documents produced by Kraft during discovery. "Kraft 0151" and "Kraft 0152." Dkt. 71-1, Ex. 1. Kraft 0151 contains a table labeled "Nielsen Quick Facts"

---

[4] Marketplace datasets "contain information on product attributes, distribution, advertising, and sales, for the products available in the marketplace, disaggregated by time period, retail outlet, and, possibly, individual . . . ." Bodapati Decl. ¶ 9.

**[5]** Conjoint experiment datasets "contain information on individuals' product choices from a controlled set of product alternatives presented according to their product attributes." Bodapati Decl. ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

that contains information about the Product. *Id.* at 2. There are four columns that contain descriptive terms: “KF Subcategory(C)”; “KF Key Brand(C)”; “KF Fat(C)”; and “Short Product Description.” *Id.* The term “NTRL” appears only in the Short Product Description column. *Id.* All entries in that column state “KRFT NTRL YLW CHDR FAT FR SHRD BAG 7 OZ 002100002462.” *Id.* Kraft 0152 contains another table with information about the Product. *Id.* at 3. It also contains four columns with descriptive information about the Product: “KF Subcategory”; “KF Key Brand”; “KF Fat”; and “UPC.” The term “NTRL” only appears in the UPC column. *Id.* All entries in that column state “KRFT NTRL YLW CHDR FAT FR SHRD BAG 7 OZ 002100002462.” *Id.* Plaintiffs contend that these entries demonstrate that there is marketing and sales data that applies to the sale of natural cheese merchandise, including the Product.

Second, Plaintiffs rely on an interrogatory response by Kraft. Dkt. 71-2, Ex. 2. When asked whether it maintained “accounting of sales and distribution of the Product” (*id.*, No. 14), Kraft responded that it “maintains sales data of [the Product] that is sold to retailers” and “records that reflect sales of [the Product] to its customers (*i.e.*, retailers) on a national level.” *Id.* Kraft was also asked to describe its “system of keeping records of sales and distribution of the Product.” *Id.*, No. 15. Kraft responded that it “does not have records reflecting the specific store locations to which . . . retailers shipped [the Product] for sale to end-user consumers.” *Id.* However, Kraft “has some Nielsen reports that track sales in geographic markets . . . but it is Kraft’s understanding that Nielsen’s market geographic data is based on large metropolitan areas and may include sales in several different states, depending on how Nielsen and the retailers define the boundaries of various geographic regions.” *Id.* It stated that Kraft 0151 and Kraft 0151 (Dkt. 71-1, Ex.1) were the “best evidence in [Kraft’s] possession of sales of [the Product] in California.” *Id.*

Third, Plaintiffs rely on two pages from the Nielsen website: the “About Us” page (Dkt. 71-3, Ex. 3) as well as the “Newswire” page (Dkt. 71-4, Ex. 4). One describes an 18-month pilot program that Nielsen administered for Kraft to track “how consumers interact with different media and the actions they take after such exposure.” *Id.* The following statement is made about the study:

> [W]ith [the pilot program], we can see how a consumer -- with all identifying information removed -- who was exposed to a digital banner ad for Kraft Natural Cheese, subsequently ran an online search for a recipe involving shredded cheese, which took her to a landing page on Kraft Recipes.com, ultimately resulting in the purchase of Kraft cheese.

*Id.* Plaintiffs argue that this evidence demonstrates that Kraft has used Nielsen data to track consumer sales of the Product and that there is corresponding marketplace data.

Finally, Plaintiffs rely on the declaration of Chris Hjorth in which he estimates that there were approximately $4.7 million in sales of the Product in California during the Class Period. Hjorth Decl. ¶ 4, Dkt. 71-5, Ex. 5.

(3) Application

Plaintiffs have demonstrated that damages may be calculated on a class-wide basis. As explained in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

*Levya,* issues as to damages calculations do not bar class certification. Further, as required by *Comcast*, Plaintiffs have presented a method for calculating damages that is tied to their theory of liability. They contend that each class member paid more for the Product because the term "natural cheese" was used to describe it. From this they argue that damages can be measured by applying the analytical methodology proffered by Bodapati, *i.e.*, the choice model theory using marketplace and conjoint experiment datasets. This dollar amount can then be multiplied by the number of units purchased by each class member to determine both total and individual damages. Further, even if individual issues as to damages arise at a later time, the case may be tried in two phases: liability and damages. *Jimenez*, 765 F.3d at 1168. Finally, like the plaintiffs in *Brazil I* and *Guido*, Plaintiffs here have not completed the damages calculations. However, Plaintiffs have presented a method for calculating damages that is tied to their theory of liability. For these reasons, predominance has been shown.

d) Superiority

Resolution on a class basis will be superior to proceeding with individual actions. Given the small amount of damages that could be claimed by an individual class member, if certification were denied, it is unlikely that claims would be pursued. Further, if hundreds or thousands of class members brought individual claims, it would be an inefficient use of judicial and party resources. The proposed class concerns claims only as to consumers who purchased the Product in California during the Class Period. For all of these reasons, a class proceeding in this action would be superior to other forms of litigation.

D. Ascertainability

1. <u>Legal Standard</u>

"Although there is no explicit requirement concerning the class definition in [Fed. R. Civ. P.] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679-80 (S.D.Cal.1999). To meet this requirement, a class must be defined "by reference to objective criteria." *Algarin v. Maybelline*, 300 F.R.D. 444, 454 (S.D. Cal. 2014). And, it must be "administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

In *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012), the Third Circuit concluded that a class "must be currently and readily ascertainable based on objective criteria." Thus, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 593. There, the following class was certified by the district court:

> New Jersey state subclass consisting of [any] and [a]ll current and former owners and lessees of 2006, 2007, 2008, and 2009 BMW vehicles equipped with run-flat tires manufactured by Bridgestone and/or BATO and sold or leased in the United States whose Tires have gone flat and been replaced (excluded from the Class and the Sub– Class are Defendants, as well as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

> Defendants' affiliates, employees, officers and directors, including franchised dealers, and any person who has experienced physical injury as a result of the defects at issue in this litigation).

*Id.* at 592.

The Third Circuit explained that this proposed class raised “serious ascertainability issues” because: (i) BMW could not identify all owners and lessees of BMW vehicles with factory-equipped Bridgestone RFTS that were initially purchased or leased from its New Jersey dealerships; (ii) BMW could not determine which of the vehicles had Bridgestone RFTs; (iii) not every vehicle that arrived at a dealership with Bridgestone RFTs left with them; and (iv) even if the proper vehicles with the subject tires could have been identified, BMW’s records would not show whether the Bridgestone RFTs of a potential class member had “gone flat and been replaced,” because the class was not limited to those who took their vehicles to BMW dealers for that service. *Id.* at 594.

The certification was reversed and the matter remanded to the district court to resolve the issue whether BMW’s records or some other “reliable, administratively feasible alternative” would allow the court to ascertain the members of the proposed class. *Id*. at 594. The Third Circuit cautioned against “approving a method that would amount to no more than ascertaining by potential class members’ say so” because “simply having potential class members submit affidavits that their Bridgestone RFTs have gone flat and been replaced . . . without further indicia of reliability, would have serious due process implications.” *Id.*

*Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013) explained that the “type of challenge to the reliability of evidence that is required will vary based on the nature of the evidence.” Thus, it was improper to certify a class of purchasers of a consumer product on ascertainability grounds where defendant would not “be able to test the reliability of the evidence submitted to prove class membership.” *Id.* at 307. Retailer records listing purchasers of the consumer product could be challenged by deposing a corporate record-keeper. *Id.* at 308. However, because, at class certification, the plaintiff had not offered proof that purchasers could be identified by retailer records, the Third Circuit found that this method was not appropriate. *Id.* at 308-9.

*Carrera* also rejected a proposed screening method for self-identification offered by one of the plaintiff’s experts. *Id.* at 310-11. He was a member of a consulting firm that specialized in determining whether claims were fraudulent. *Id.* at 311. This screening process had been used previously in the class action settlement context. *Id.* The defendant argued that this approach was not reliable because it “only addresses methods for allocating payment to a settlement class.” *Id.* The defendant also argued that there was no evidence that affidavits would be reliable. The Third Circuit agreed. *Id.* Further, it found that no court would “see the model in action” and would, instead, have to rely on “the plaintiff’s assurances it will be effective.” *Id.* The Third Circuit remanded the case to the district court to allow the plaintiff to “submit a screening model specific to this case and prove how the model will be reliable and how it would allow [the defendant] to challenge the affidavits.” *Id.*

In *Campbell v. Best Buy Stores, L.P.*, No. LA-CV12-07794-JAK-SHx (C.D. Cal. Aug. 5, 2014) (Dkt. 150 at 9-12), this Court had previously certified a class of technicians allegedly not paid for the time each spent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

driving home at the end of the work day. The premise of the claims was that the technicians drove home in company-owned vehicles and were subject to various restrictions, *e.g.*, not permitted to stop to perform personal errands such as shopping. Part of the anticipated class process as to damages called for members of the class to self-identify through sworn statements. Defendant had objected to this approach as unreliable following the completion of certain discovery. The Court rejected this argument and denied Defendant's motion for decertification. *Id.* at 11. However, the defendant maintained time records that could be used to cross-check this self-identification.

The Ninth Circuit has not addressed whether self-identification by members in a consumer class action is sufficient to satisfy an ascertainability requirement. District courts are divided on the issue whether a class of consumers is ascertainable when there is no other means to cross-check self-identification. Some courts have rejected the reasoning in *Marcus* and *Carrera*, because it would, in effect, preclude the low cost consumer class action. *E.g., McCrary v. Elations Co., LLC*, No. ED-CV-13-00242-JGB-OPx, 2014 WL 1779243, at *7-8 (C.D. Cal. Jan. 13, 2014) ("*Carrera* eviscerates low purchase price consumer class actions in the Third Circuit" by disallowing certification "in any case where the consumer does not have a verifiable record of purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers"); *accord Astiana v. Kashi Co.*, 291 F.R.D. 493, 498 (S.D. Cal. 2013) (class of consumers challenging alleged misrepresentations that consumer products were "all natural" or contained "nothing artificial" was ascertainable notwithstanding that the consumers did not have records proving purchase). Similarly, in *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376-77 (N.D. Cal. 2010), a class action alleging that defendants misled consumers as to the origin of the products at issue, the court concluded that a class of all those who had purchased the product bearing the alleged misleading label was ascertainable.

Other district courts have rejected self-identification. *E.g.*, *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 450 (S.D. Cal. 2014). In *Algarin*, consumers challenged representations made about certain makeup products. These included that, once the makeup was applied, it would remain in place for at least 24 hours and there would be "Zero Transfer." The defendants argued that the class was not ascertainable because it included uninjured purchasers -- those that did not rely on the alleged misrepresentations -- and that members of the class could not be readily determined because of the absence of purchase records. *Id.* at 454. The court rejected the reliance arguments raised by the defendants, but found that the proposed class was unascertainable. It found self-identification by class members would be unreliable. *Id.* at 455-56; *accord In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D. Cal. 2014) (adopting *Carrera* in denying certification of a class challenging representations about the effectiveness of a cat litter product because "[a]ffidavits from consumers alone are insufficient to identify members of the class," (*id.* at 440) particularly where sufficient purchasing records were not available from 14 of the 16 retailers the plaintiffs contacted (*id.* at 442)).

2. <u>Application</u>

The Ninth Circuit has not adopted an ascertainability standard. Nor has it determined whether self-identification is an acceptable means of establishing class membership. Given the modest retail price of the Product, common sense dictates the view that it is likely that many who purchased it did not receive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

receipts, and that those who did have not retained them. The same logic applies to many other retail products. Of course, some consumers may have retained purchase records, perhaps because they were budgeting or were keeping track of expenses for tax purposes. Others may have participated in rewards programs of retailers that may have tracked their purchases of the Product. But, putting aside these potential means of establishing or confirming membership in the Class, for several reasons, self-identification through sworn statements makes sense in this case.

First, absent this approach, a class proceeding would not be available in this consumer class action. Nor would it be available in others in which claims are advanced about representations made about low cost retail products. That thousands of potential actions could be brought, or almost none, would be inconsistent with the bases for Rule 23.

Second, a sworn statement, made under penalty of perjury, has some inherent reliability. People are not expected to lie. Moreover, any individual class member is not likely to present a claim for a large dollar amount due the limited number of purchases likely made during the class period and Plaintiffs' theory that only a small percentage of the purchase price can be attributed to the alleged misstatement. This reinforces the idea that people would not be expected to lie over a small dollar claim that is made in connection with a judicial process.

Third, for Plaintiffs to succeed on the merits in this action -- which would precede any notice to class members inviting the submission of claims -- among other things, they must have shown, by a preponderance of the evidence: (1) a reasonable consumer would have been misled by the term "natural cheese" (the § 17200 claim); or (2) marketing the Product as "natural cheese" was a material misrepresentation (the CLRA claim). To have prevailed on either, Plaintiffs will have offered proof that applies across the class, *i.e.*, common proof. This could include survey evidence that supports the claim that reasonable consumers were misled and that the misrepresentation was material to their decisions to purchase the Product. Because establishing these elements will be a prerequisite to an award of damages, there will be added reliability to self-identification by consumers as class members.

In light of the foregoing, certification is appropriate. However, the approved class is more narrow that proposed by Plaintiffs. Plaintiffs have standing on behalf of the class as defined, *i.e.*, all who purchased the Product. *See Stearns*, 655 F.3d at 1022; *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 337 (2011); *In re Tobacco*, 43 Cal.4th at 324. However, restitution for portions of the amounts spent on purchasing the Product is only available to those purchasers who suffered injury. Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780. Accordingly, the class is limited to those consumers that were misled by Kraft's use of the term "natural cheese," and made purchasing decisions due to that deception and not for other reasons. Therefore, the class is defined as follows:

> All persons who, between May 7, 2010 through the present, purchased the Product in the State of California for personal use and not for resale and who did so because the Product was described as "natural cheese," which meant that it contained no artificial ingredients.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | June 23, 2015 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' Motion is **GRANTED IN PART.**

**IT IS SO ORDERED.**

:

Initials of Preparer ak