**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         ykrivoshey@bursor.com

**LEVI & KORSINSKY, LLP**
Shane T. Rowley (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: srowley@zlk.com
       cmaccarone@zlk.com

*Counsel for Plaintiff*
*(additional counsel appear on signature page)*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUELINE DEAN, on Behalf of Herself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COLGATE-PALMOLIVE CO.<br><br>Defendant. | Case No. 5:15-CV-00107-JGB(DTBx)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:  May 15, 2017<br>Time:  9:00 a.m.<br>Courtroom 1<br><br>Hon. Jesus G. Bernal |

UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED
UNDER SEAL

# TABLE OF CONTENTS

**PAGE(S)**

I. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS ............................ 1
   A. Plaintiff Relied On Defendant's "Deeply Whiten" Claims .................... 1
   B. Plaintiff's Dental History Does Not Render Her Atypical ..................... 2
   C. Plaintiff's Expectations For Optic White Do Not Render Her Atypical ............................................................................................. 4
II. PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE ................... 5
   A. The Accusations Concerning Plaintiff's Credibility Do Not Render Her Inadequate ............................................................................ 5
III. COMMON QUESTIONS PREDOMINATE ...................................................... 7
   A. Plaintiff's Damages Models Satisfy *Comcast* .......................................... 7
   B. Defendant Fails To Identify Material Differences In The Express Warranty Laws Of The Ten Jurisdictions ................................. 9
IV. COLGATE'S "CUSTOMER SATISFACTION POLICY" DOES NOT AFFECT THE SUPERIORITY ANALYSIS ......................................... 11
   A. Plaintiff Clearly Satisfies the Superiority Requirement ........................ 11
V. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ON BEHALF OF THE CLASS ........................................................ 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abbate v. Werner Co.*,
  2012 WL 1413524 (Del. Super. Ct. Jan. 19, 2012) ..................................................... 9

*Allen v. Similasan Corp.*,
  306 F.R.D. 635 (S.D. Cal. 2015) .................................................................................. 5

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015) .................................................................................. 7

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013) ................................................................................................... 8

*Genesis Ins. Co. v. BRE Properties*,
  916 F. Supp. 2d 1058 (N.D. Cal. 2013) ..................................................................... 10

*Grodzitsky v. Am. Honda Motor Co. Inc.*,
  2014 WL 718431 (C.D. Cal. Feb. 19, 2014) ................................................................ 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 3

*In re 5-Hour ENERGY Marketing & Sales Practices Litig.*,
  2017 WL 385042 (C.D. Cal. Jan. 24, 2017) ................................................................. 4

*In re Aqua Dots Prod. Liab. Litig.*,
  270 F.R.D. 377 (N.D. Ill. 2010) ................................................................................. 11

*In re Aqua Dots Prod. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ...................................................................................... 11

*In re Korean Ramen Antitrust Litig.*,
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017) .............................................................. 10

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................... 12

*McCrary v. Elations Co., LLC*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) .............................................................. 3

*Melgar v. Zicam LLC*,
  2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ............................................................. 9

*Pack & Process, Inc. v. Celotex Corp.*,
  503 A.2d 646 (Del. Super. Ct. 1985) ........................................................................... 9

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................... 11

*Power Soak Sys., Inc. v. Emco Holdings, Inc.*,
 482 F. Supp. 2d 1125 (W.D. Mo. 2007) ................................................................. 9

*Ries v. Ariz. Bevs. USA LLC*,
 287 F.R.D. 523, 530 (N.D. Cal. 2012) .................................................................... 1

*Rodman v. Safeway, Inc.*,
 2014 WL 988992 (N.D. Cal. Mar. 9, 2014) ......................................................... 1, 2

*Simpson v. Fireman's Fund Ins. Co.*,
 231 F.R.D. 391 (N.D. Cal. 2005) ............................................................................ 2

*Torres v. Rhoades*,
 2015 WL 9304584 (W.D. Wis. Dec. 21, 2015) ...................................................... 7

*Turcios v. Carma Labs., Inc.*,
 296 F.R.D. 638 (C.D. Cal. 2014) .......................................................................... 11

*United States v. Alexander*,
 106 F.3d 874 (9th Cir. 1997) ................................................................................ 12

*Washington Mut. Bank, FA v. Superior Court*,
 24 Cal. 4th 906 (2001) ...................................................................................... 9, 10

*Zeisel v. Diamond Foods, Inc.*,
 2011 WL 2221113 (N.D. Cal. June 7, 2011) ......................................................... 3

I.     **PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS**

   A.     **Plaintiff Relied On Defendant's "Deeply Whiten" Claims**

Colgate argues that Plaintiff is not typical because her "own sworn statements make clear that she did not rely on the 'Deeply Whitens' representations when purchasing Optic White." Def.'s Br. at 7. That argument is directly contrary to the evidence. Plaintiff testified that she relied on the product commercials and labeling in making her purchase decision, and that as a result of those representations she "believed the product would do what it said, whiten teeth." Reply Declaration of Jacqueline Dean ("Dean Reply Decl."), Ex. A, Dean Dep. Tr. at 95:10-11; *see also id.* at 91:10-21 (testifying about commercials); *id.* at 92:13-94:20 (testifying about product labeling).

Defendant's reliance argument is based solely on Plaintiff's uncertainty about precisely when she first purchased Optic White. However, a plaintiff's imperfect recollection of his or her purchase history is not enough to defeat reliance, standing, or typicality. In *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. 2012), for example, the court explained that "[D]efendants may attempt to exploit plaintiffs' imperfect recollections to persuade the trier of fact to discount their testimony, but critically, because plaintiffs specifically recall defendants' representations [] and indicate that statement was material to their purchase, this standing requirement is satisfied." Similarly, in *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *15 (N.D. Cal. Mar. 9, 2014), the court rejected defendant's argument that inconsistencies in plaintiff's testimony disqualified him where it did not imperil his ability to demonstrate his own reliance.

The same is true here. Defendant does not deny that Plaintiff specifically recalled the misrepresentation at issue, and that she has always been certain that she saw and relied on the misrepresentation <u>before</u> she made that purchase:

> Q: With respect to the "deeply whitens" representation on the box, did you see that statement before you purchased the product for the first time or after you purchased the product for the first time?
>
> A: Before.

Dean Reply Decl., Ex. A, Dean Dep. Tr. at 47:9-14; *id.* at 45:25-46:23 (testifying that she viewed commercials for Optic White prior to purchasing the product); *id.* at 91:6-21 (testifying that she stopped purchasing Crest toothpaste after viewing the Optic White commercials and thereafter began purchasing Optic White); *see also* Dkt. No. 1 at ¶ 4 ("Ms. Dean purchased Colgate Optic White based on claims on Optic White's label and in television commercials …. One of the commercials Ms. Dean viewed featured a sand dollar that 'can absorb stains like teeth' that showed Colgate Optic White 'whiten[ing] deeper' than another toothpaste.").

     Moreover, Colgate admits that the commercial Plaintiff saw first aired in March 2014, after Colgate began telling its consumers on the Optic White packaging that the product "goes beyond surface stains to deeply whiten teeth." *See* Def.'s Br. at 8. While Plaintiff dated this purchase in her deposition as having taken place a few months earlier in 2014, and an earlier date in her complaint, this inconsistency is not surprising given the lapse of more than two years between her purchase of the product and her deposition. But given Plaintiff's consistent testimony concerning reliance, her imperfect memory about dates does not "imperil[] her ability to demonstrate her own reliance." *Rodman*, 2014 WL 988992, at *15.

### B. Plaintiff's Dental History Does Not Render Her Atypical

     Colgate argues that Plaintiff's claims are not typical because Plaintiff has artificial crowns. *See* Def.'s Br. at 10-11. That is irrelevant.

     "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal.

2005) (internal quotations omitted). "Representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff asserts the same legal theory applicable to all class members: Optic White does not deeply whiten teeth. It did not deeply whiten her natural teeth and it does not deeply whiten the natural teeth of other class members. Plaintiff purchased and used Optic White as an attempt to whiten only her natural teeth. *See* Dean Reply Decl., Ex. A, Dean Dep. Tr. at 177:25-178:2 ("Q: You were only interested in whitening your natural teeth? A: Yes."). As Colgate concedes, Plaintiff clearly testified that she did not believe that Colgate Optic White would whiten any artificial crowns in her mouth. *See id.* at 186:17-20 ("Q: And you understood that your – neither your crowns nor your bridges could be deeply whitened by Optic White; correct? A: Of course."); *see also* Def.'s Br. at 10.

Furthermore, courts have rejected Colgate's "unique history" argument in cases like this where it is likely that a substantial portion of the class also have unique medical histories or where the plaintiff's medical condition is irrelevant to the claims. In *McCrary*, the court noted:

> [T]he defense raised against Plaintiff is not "[a]typical of the defenses which may be raised against other members of the proposed class," as it is likely many other Elations' users took other medications and/or suffer from other illnesses. *Hanon*, 976 F.2d at 508; *see also Ellis*, 657 F.3d at 984. Accordingly, this potentially common defense does not render Plaintiff atypical.

*McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *11 (C.D. Cal. Jan. 13, 2014); *see also Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *8 (N.D. Cal. June 7, 2011) ("Based on Zeisel's theory of the case, namely that the Shelled Walnut Products were misbranded and misleading, the Court concludes that his claims –

notwithstanding his medical condition – are reasonably co-extensive with those of absent class members.") (internal quotations omitted).

The same is true here. Every single user of Optic White has a unique dental history, and presumably many class members have had extensive dental work or artificial crowns. But because Plaintiff asserts a legal theory common to all class members about the product's effect on natural teeth, she satisfies the typicality requirement.

### C. Plaintiff's Expectations For Optic White Do Not Render Her Atypical

Colgate argues that Plaintiff is unable to show reliance because she expected Optic White to work "within a couple of weeks" and continued to use the product for over a year. *See* Def.'s Br. at 5. That argument is rebutted by *In re 5-Hour ENERGY Marketing & Sales Practices Litig.*, 2017 WL 385042, at *6 (C.D. Cal. Jan. 24, 2017), where the court rejected the argument that plaintiffs could not establish reliance because they purportedly should have realized that the product did not work after they purchased it the first time. As the court explained, "[a]ll Plaintiffs testified that it took some time before they realized that [the product] did not work as advertised," and they continued to buy the product thinking that it would eventually work. *Id.* The same is true here. Plaintiff clearly testified that she continued to purchase the product because she was hoping that "eventually it would do what it said it would do." Dean Reply Decl., Ex. A, Dean Dep. Tr. at 118:5.

Colgate's argument is particularly rich, considering that its entire marketing campaign is based on exploiting the unrealistic expectations of consumers by selling "hope in a jar." *See* Dkt. No. 48, Persinger Decl. Ex. 11 at 13568 (depicting "hope in a jar" and stating that consumers are "[w]illing to try compelling products, hoping that they would deliver a higher level of whitening"). Thus, there is nothing atypical about Plaintiff; she is just a typical consumer fooled by Colgate's false and

misleading claim that Optic White goes beyond surface stains to deeply whiten teeth. Her repeated purchases do not demonstrate lack of reliance, but instead the ongoing success of Defendant's deception.

## II.   PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

### A.   The Accusations Concerning Plaintiff's Credibility Do Not Render Her Inadequate

Absent evidence of an outright dishonest character, a challenge to a plaintiff's adequacy generally requires proof that the plaintiff has a "striking lack of knowledge" about her case. *See Allen v. Similasan Corp.*, 306 F.R.D. 635, 646 (S.D. Cal. 2015). Defendant does not – and cannot – argue that Plaintiff lacks adequate knowledge of this case. *See* Dean Reply Decl., Ex. A, Dean Dep. Tr. at 55:18-23 (testifying about her role as a class representative); *id.* at 95:24-96:7 (testifying about the nature of the lawsuit); *id.* at 194:11-13 (same). Instead, Defendant's adequacy arguments rest on portraying Plaintiff as a dishonest person. *See* Def.'s Br. at 11-14. That argument is belied by the record.

First, Colgate contends that Plaintiff lied throughout this litigation about the exact dates on which she purchased the product. *See* Def.'s Br. at 11-12. However, as discussed above, the record shows that Plaintiff was mistaken about those dates and associated her first purchase of the product with Colgate's nationally aired television commercial which advertised that Optic White would deeply whiten consumers' teeth. *See* Dean Reply Decl., Ex. A, Dean Dep. Tr. at 45:25-46:23; *id.* at 49:2-6; *id.* at 91:6-21 (testifying that after viewing Optic White commercials, she switched from using Crest toothpaste and began purchasing Optic White). Plaintiff had no motivation to lie about the specific date that she purchased the product and courts do not require that level of accuracy to determine that a plaintiff is adequate to serve as a class representative. *See Allen*, 306 F.R.D. at 646 ("The Court is unsurprised that Plaintiffs cannot remember specific dates of purchases, and it is not a 'striking lack of knowledge' about Plaintiffs' claims.").

Second, Colgate attacks Plaintiff's adequacy for allegedly insufficient disclosures in her bankruptcy proceedings, arguing that she "admits she knew she was supposed to list [certain real] properties" in her petition.  *See* Def.'s Br. at 5, 13.  That misstates Plaintiff's testimony, which demonstrates her genuine lack of understanding concerning the complex nature of bankruptcy petitions.  *See, e.g.*, Dean Reply Decl., Ex. A, Dean Dep. Tr. at 38:13-25; *id.* at 41:10-17; *id.* at 197:18-198:17.  As a result, Plaintiff sought legal counsel to assist her with the bankruptcy filing, and trusted that she would be appropriately advised.  However, at that time, Plaintiff was unaware that her bankruptcy attorney was facing disciplinary action for which he has since been disbarred from the practice of law in the State of California.  *See* Dean Reply Decl. ¶¶ 8-9; *see also id.* Ex. A, Dean Dep. Tr. at 200:23-201:1; Reply Declaration of L. Timothy Fisher Decl. ("Fisher Reply Decl."), Ex. A, Member detail of Stephen Adrian Rodriguez.  Neither Plaintiff nor the class should be penalized for the failures of Plaintiff's bankruptcy counsel.

Third, Colgate attacks Plaintiff's credibility for "omit[ting] prior litigation from her interrogatory responses." Def.'s Br. at 2.  As a preliminary matter, there obviously was no effort to conceal the workers' compensation claims because Plaintiff forthrightly testified about the claims at her deposition, unprompted by Defendant's counsel.  And, as Plaintiff's deposition testimony demonstrates, the claims were not disclosed in the interrogatories because Plaintiff did not understand workers compensation claims to qualify as "lawsuits."  *See* Dean Reply Decl. ¶¶ 13-15; *see also id.* Ex. A, Dean Dep. Tr. at 205:9-11 ("Q:  How do you know the name Carol Harris?  A: Because it's part of a workers' comp claim I had"); *id.* at 206:1-5 ("Q:  What do you mean by 'being sick in the building'?  A:  Well, that was part of the workers' comp claim.  I was – got injured in the building.  Sick – "); *id.* at 206:12-13 ("I also had a workers' comp injury at the Wilshire building, yes.").

1  Despite Colgate's repeated pressing on the subject, she maintained her belief that it
2  was a workers' compensation claim.  *See id.* at 207:1-6.
3        Like many members of the prospective class, Plaintiff is not highly
4  sophisticated with respect to legal proceedings.  But there is no question that Plaintiff
5  understands her claims and understands that she is a plaintiff in this lawsuit seeking
6  appointment as a class representative.  *See, e.g.*, Dean Reply Decl., Ex. A, Dean Dep.
7  Tr. at 55:22-23 ("I represent the people that feel the same way I do").  Class
8  representatives are not required to have a sophisticated understanding of the law.
9  *See Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 538 (N.D. Cal. 2015) ("The class
10 mechanism is, at times, the only mechanism available to protect the rights of those
11 who may be less sophisticated than seasoned defense counsel.").  Regardless, should
12 the Court take issue with the adequacy or typicality of Plaintiff Dean, Plaintiff
13 requests that it grant her pending motion for leave to amend to add an additional
14 named plaintiff.  *See* Dkt. No. 77.  A meritorious class action should not fail should
15 the Court determine that Plaintiff is not a suitable class representative.  *See*, *e.g.*,
16 *Torres v. Rhoades*, 2015 WL 9304584, *1 (W.D. Wis. Dec. 21, 2015) (denying
17 certification without prejudice to allow the plaintiffs to "find additional named
18 plaintiffs whose interests more closely match the other class members"); *Grodzitsky*
19 *v. Am. Honda Motor Co. Inc.*, 2014 WL 718431, at *1 (C.D. Cal. Feb. 19, 2014)
20 (denying certification without prejudice based in part on adequacy concerns while
21 simultaneously granting plaintiffs leave to add a new plaintiff).

## III.  COMMON QUESTIONS PREDOMINATE

### A.  Plaintiff's Damages Models Satisfy *Comcast*

To calculate classwide damages, Plaintiff relies in part on Colgate's "Optic White Price Premiumization Study" to determine the price premium attributable to Colgate's false and misleading "Deeply Whiten(s)" representations.  Opening Br. at

7-12.[1] Colgate argues that Plaintiff's "Price Premiumization" model fails because "actual market data reveals there was no price increase per unit of Optic White after the relevant product claims were added." Def.'s Br. at 15. Colgate bases its conclusion on the flawed regression analysis of its expert Professor Peter Rossi. Specifically, Professor Rossi excluded data on critical marketplace forces like competitor pricing, advertising, and promotional activity from his analysis. Weir Reply Decl. ¶¶ 41-51. By omitting such data, Professor Rossi's analysis is incapable of determining if there is a price premium attributable to Colgate's "Deeply Whiten(s)" claim. *Id.* ¶¶ 50-51. Professor Rossi also cherry picked the time period for his analysis to show no price increase. *Id.* ¶¶ 57-62. When Plaintiff's expert re-ran Rossi's analysis over the entire period for which he had data, Rossi's analysis showed a statistically significant price premium for the "Deeply Whiten(s)" claim. *Id.*

Colgate also argues that its Price Premiumization study cannot be used to calculate a price premium in this case. Def.'s Br. at 16-18. Conjoint analysis, like that utilized in the Optic White Price Premiumization study, has been routinely used to determine a market price premium in both litigation and business. *See* Weir Reply Decl. ¶ 16 n. 12 (citing cases); *see also* Opening Br. at 10-12. In fact, as Professor Rossi concedes, Colgate routinely undertakes surveys like the Price Premiumization Study to estimate market outcomes. Weir Reply Decl. ¶¶ 27-30. Colgate also completely ignores the fact that its Price Premiumization study was externally validated using Nielsen's sales forecasting method BASES to confirm the accuracy of its results. *Id.* ¶¶ 67-71. Plaintiff's proposed damages methodology therefore satisfies the requirements of *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013).

---

[1] Plaintiff also proposes two additional damages models: an alternative conjoint survey and a contingent valuation survey. *See* 4/29/16 Weir Declaration ¶¶ 34-55.

### B. Defendant Fails To Identify Material Differences In The Express Warranty Laws Of The Ten Jurisdictions

First, Colgate contends that "the express-warranty laws of the ten states within Plaintiff's proposed class impose materially different standards for reliance." Def.'s Br. at 21. To carry its burden, Colgate must "identify the applicable rule of law in <u>each</u> potentially concerned state and must show it materially differs from the law of California." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001) (emphasis added). Here, Colgate contends that there are material differences between the law of California and that of only two other jurisdictions – Delaware and Missouri.[2] *See* Def. Br. at 22. That is wrong.

In Delaware, "[w]hether or not an affirmation of fact or promise was part of the basis of the bargain of a modified contract is a question of fact properly left for the jury. The burden is on the defendant to prove the absence of reliance in order to discount the contention that express warranties were 'a basis for the bargain.' Proof of reliance, however, is not necessary to create an express warranty." *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 659 (Del. Super. Ct. 1985); *see also Abbate v. Werner Co.*, 2012 WL 1413524, at *3 (Del. Super. Ct. Jan. 19, 2012) ("Proof of reliance [] is not necessary to create an express warranty."). Similarly, in Missouri the "modern trend is that a buyer need not rely on a seller's express warranty in order to recover for the seller's subsequent breach of the express warranty. … The key question is not 'whether the buyer believed in the truth of the warranted information ... but whether it believed it was purchasing the seller's promise as to its truth.' In other words, the buyer is only 'relying' on the express warranty being part of the contract." *Power Soak Sys., Inc. v. Emco Holdings, Inc.*, 482 F. Supp. 2d 1125, 1134 (W.D. Mo. 2007). *See also Melgar v. Zicam LLC*, 2016

---

[2] Colgate therefore concedes that there are no material differences between the laws of California and the remaining states in the multi-state class.

WL 1267870, at *2, *11 (E.D. Cal. Mar. 31, 2016) (certifying warranty claims on behalf of a multi-state class that included Delaware and Missouri).[3]

Colgate further argues that the states in the multi-state class "not only have an interest in applying their own laws to their citizens, but also in addressing alleged wrongs that occurred within their borders." Def.'s Br. at 22. However, when there is no conflict between the laws of the different states, there is no need to examine the respective interests of those states. *See Genesis Ins. Co. v. BRE Properties*, 916 F. Supp. 2d 1058, 1065 (N.D. Cal. 2013) ("Neither party has pointed to a material conflict between California and Oregon law that would trigger the application of the government interest test. … Accordingly, California law applies in this case."). As the Supreme Court of California has explained, "[t]he fact that two or more states are involved does not in itself indicate there is a conflict of laws problem. … Indeed, if the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable to class claims." *Washington Mut. Bank*, 24 Cal. 4th at 919-20 (internal citations omitted) (emphasis added). Since the relevant laws of each state in question here are not materially different, application of California law is appropriate.

Similarly, Plaintiff satisfies any constitutional requirement for a multi-state class by including class members only from states whose applicable laws are not materially different from that of California. "Due process requires a showing of *either* sufficient contacts *or* absence of conflict between laws before one state's laws can be exported and apply to the claims of class members in other states." *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) (emphasis added). As the Supreme Court of the United States explained, "[t]here can be no injury in applying [forum] law if it is not in conflict with that of any other

---

[3] Nonetheless, if the Court finds California law materially conflicts with the laws of Delaware and Missouri, Plaintiff submits that the proper remedy is to simply omit the conflicting states from the multi-state class definition.

jurisdiction connected to this suit." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985). Since the express warranty laws of the states in the multi-state class are not materially different from California, application of California law is appropriate.

### IV. COLGATE'S "CUSTOMER SATISFACTION POLICY" DOES NOT AFFECT THE SUPERIORITY ANALYSIS

#### A. Plaintiff Clearly Satisfies The Superiority Requirement

Colgate argues that because its "no-questions-asked, full refund policy renders Plaintiff's proposed class superfluous, … a class action cannot be the superior method of resolving this controversy." Def.'s Br. at 24. That is wrong. As the Seventh Circuit has explained, a money back guarantee can never satisfy the Rule 23(b)(3) superiority requirement because it is "not a form of adjudication." *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) ("Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question of whether a single suit would handle the dispute better than multiple suits. A recall campaign is not a form of 'adjudication' under the committee note.") (internal citation omitted). Moreover, "an illusory promise of private redress obviously will not defeat a request for class certification." *In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 377, 384 (N.D. Ill. 2010). Here, there is no question that Colgate's refund policy is illusory.

First, Colgate's refund policy is only applicable to Colgate's Optic White <u>Radiant</u> toothpaste product, a product that is not challenged in this action. *See* Fisher Reply Decl. Ex. B ("If you are not completely satisfied with your Colgate Optic White <u>Radiant</u> toothpaste, here's' [sic] how to receive your full money back refund check by mail.") (emphasis added).[4] Similarly, Colgate's policy is limited to purchases that occurred between "3/1/17-12/31/18." *Id.* As a result of this

---

[4] Colgate's reliance on *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014), is misplaced because there the "Defendant [] presented evidence of its full refund policy." Since Colgate's policy only concerns its Radiant products that are not at issue here, it has failed to present sufficient evidence of a full refund policy.

limitation, class members who purchased Optic White between October 1, 2013 and February 28, 2017 are inexplicably precluded from obtaining any relief.

Second, Colgate does not inform its consumers of the availability of its refund policy on Optic White's packaging. Rather, the terms of the refund policy are only accessible upon navigating through Colgate's website. *See* Dkt. No. 72-25, Holder Decl. ¶ 2. Since consumers are unaware that Colgate's refund policy exists unless they visit Colgate's website, it is not superior to a class action. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415-16 (S.D.N.Y. 2015) ("If consumers do not realize the No Quibble Guarantee exists, it cannot be a superior alternative to a class action.").

Finally, Colgate complains that a class action is not superior because class members are unlikely to have retained receipts. Def.'s Br. at 24-25. Yet Colgate's refund policy expressly requires consumers to submit an original receipt <u>and</u> UPC barcode to qualify for a maximum refund of $8.99. *See* Fisher Reply Decl. Ex. B (claimants must mail "the <u>original dated register receipt</u> dated between 3/1/17-12/31/18 with price circled, <u>and</u> UPC barcode from Colgate Optic White Radiant Toothpaste Carton") (emphasis added).

## V.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ON BEHALF OF THE CLASS

Colgate argues that Plaintiff lacks standing to seek injunctive relief because she "does not assert any plan to purchase Optic White again." Def.'s Br. at 25. That is wrong because "[t]he law of the case doctrine ordinarily precludes reconsideration of a previously decided issue." *United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997). Here, the Court already concluded "that Plaintiff has standing to pursue her injunctive relief claims." Dkt. No. 31 at 10. Since Colgate has not identified any superseding decision from the Ninth Circuit, the Supreme Court of the United States, or the California Supreme Court on this issue, there is no basis for the Court to reconsider its past conclusion on this point.

| | | |
|---|---|---|
| 1 | Dated:  May 2, 2017 | **BURSOR & FISHER, P.A.** |
| 2 | | |
| 3 | | By:   */s/ L. Timothy Fisher*   <br>         L. Timothy Fisher |
| 4 | | |
| 5 | | L. Timothy Fisher (State Bar No. 191626)<br>Yeremey O. Krivoshey (State Bar No.295032) |
| 6 | | 1990 North California Blvd., Suite 940<br>Walnut Creek, CA  94596 |
| 7 | | Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700 |
| 8 | | Email: ltfisher@bursor.com |
| 9 | |             ykrivoshey@bursor.com |
| 10 | | **LEVI & KORSINSKY, LLP**<br>Shane T. Rowley (*pro hac vice*) |
| 11 | | Courtney E. Maccarone (*pro hac vice*)<br>30 Broad Street, 24th Floor |
| 12 | | New York, New York 10004<br>Telephone: (212) 363-7500 |
| 13 | | Facsimile: (212) 363-7171<br>Email: srowley@zlk.com |
| 14 | |             cmaccarone@zlk.com |
| 15 | | **THE MARLBOROUGH LAW FIRM, P.C.** |
| 16 | | Christopher Marlborough (State Bar No. 298219)<br>445 Broad Hollow Road, Suite 400 |
| 17 | | Melville, New York 11747<br>Telephone: (212) 991-8960 |
| 18 | | Facsimile: (212) 991-8952 |
| 19 | | Email: chris@marlboroughlawfirm.com |
| 20 | | **FINKELSTEIN, BLANKINSHIP,**<br>**FREI-PEARSON & GARBER, LLP** |
| 21 | | Todd S. Garber (*pro hac* filed) |
| 22 | | 1311 Mamaroneck Avenue, Suite 220<br>White Plains, New York 10605 |
| 23 | | Telephone: (914) 298-3283<br>Facsimile: (914) 824-1561 |
| 24 | | Email: tgarber@fbfglaw.com |
| 25 | | *Counsel for Plaintiff* |
| 26 | | |
| 27 | | |
| 28 | | |