**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
          ykrivoshey@bursor.com

*Counsel for Plaintiffs*
*(additional counsel appears on signature page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE DEAN, and MELANIE BARBER on Behalf of Themselves and all Others Similarly Situated,<br><br>                    Plaintiffs,<br>          v.<br><br>COLGATE-PALMOLIVE CO.<br>                    Defendant. | Case No. 5:15-CV-00107-JGB(DTBx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Jacqueline Dean and Plaintiff Melanie Barber ("Plaintiffs"), by their attorneys, makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action against Colgate-Palmolive Co. ("Defendant") for falsely representing that Colgate Optic White toothpaste ("Optic White") "Goes Beyond Surface Stain Removal To Deeply Whiten," that Optic White "Deeply Whitens," and that the peroxide in Optic White is clinically proven to whiten and go beyond surface stain removal.  In fact, Colgate Optic White toothpaste only reaches surface stains by abrading teeth, does not go beyond surface stain removal, and does not deeply whiten teeth.  Because Colgate Optic White toothpaste does not function as a whitening agent on intrinsic stains, Defendant's representations are false and misleading.

2.     As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Class, as defined herein, purchased Colgate Optic White toothpaste.  Plaintiffs and the members of the Class purchased Colgate Optic White because they were deceived into believing that Optic White goes beyond surface stains to deeply whiten teeth.  As a result, Plaintiffs and members of the Class purchased Colgate Optic White and have been injured in fact because Optic White was not effective for deep whitening or whitening intrinsic stains.  Plaintiffs and class members have suffered an ascertainable and out-of-pocket loss.  Plaintiffs and members of the Class seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

3.     Plaintiffs seek relief in this action individually and on behalf of all purchasers of Colgate Optic White toothpaste for breach of express and implied

warranties.  Plaintiffs also seek relief in this action individually and on behalf of purchasers of Optic White in California for violation of Civil Code §§ 1750, *et seq.*, the California Consumer Legal Remedies Act ("CLRA"), Bus. & Prof. Code §§ 17200, *et seq.*, California's Unfair Competition Law ("UCL"), and Bus. & Prof. Code §§ 17500, *et seq.*, California's False Advertising Law ("FAL").

## THE PARTIES

4.      Plaintiff Jacqueline Dean is a resident of Fontana, California. Beginning in 2014, Ms. Dean regularly purchased Colgate Optic White toothpaste at Walgreens and Target stores in Fontana, California.  Ms. Dean purchased Colgate Optic White based on claims on Optic White's label and in television commercials, including, but not limited to, claims that that the toothpaste would "deeply" whiten teeth and go beyond surface stain removal.  One of the commercials Ms. Dean viewed featured a sand dollar that "can absorb stains like teeth" that showed Colgate Optic White "whiten[ing] deeper" than another toothpaste.  She would not have purchased Colgate Optic White if the label and television commercials had not stated that it would deeply whiten her teeth.  Although she purchased and used Colgate Optic White for over a year, Colgate Optic White did not deeply whitened her teeth, or affected any of the intrinsic stains on her teeth.

5.      Plaintiff Melanie Barber is a resident of Lake Forest, California. Beginning in very late 2015, and continuing through 2016, Ms. Barber regularly purchased Colgate Optic White toothpaste from several retailers, including Walmart, Target, and CVS.  Ms. Barber purchased Colgate Optic White toothpaste based on claims on Optic White's label that that the toothpaste would "deeply" whiten teeth, and go beyond surface stain removal.  Ms. Barber used Colgate Optic White toothpaste for about 6-8 months, but stopped using it because she did not notice the results promised.  Defendant Colgate's representations that Colgate Optic White toothpaste would deeply whiten her teeth were an immediate cause of Plaintiff

Barber's decision to purchase Colgate Optic White.  In all reasonable probability, she would not have agreed to purchase Colgate Optic White, or would have sought materially different terms, had she known that Defendant's representations were false and misleading.  Defendant's representations that Colgate Optic White toothpaste would deeply whiten her teeth played a substantial part, and so had been a substantial factor in, Plaintiff Barber's decision to purchase Colgate Optic White. Plaintiff Barber would purchase Colgate Optic White again if the advertising of the products were to be truthful in the future, such as through a change in the formulation of the products that would cause the current naturals claims on the products' labels to be truthful and not misleading.

6.     Defendant Colgate Palmolive Co. is a Delaware corporation with its principal place of business at 300 Park Avenue, New York, New York 10022. Colgate Palmolive Co. is engaged in the business of manufacturing, mass marketing, and distributing Colgate Optic White toothpaste throughout the United States.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiffs resides in this District, Plaintiffs purchased Optic White several times in this District, and Optic White is sold extensively in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.     Colgate Optic White's False and Misleading Labels and Advertising

9.     As shown below, the labels of Colgate Optic White toothpaste falsely represent that it "Deeply Whitens," "Goes Beyond Surface Stain Removal To Deeply

Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains unlike ordinary toothpastes."  In fact, toothpastes cannot go beyond surface stains to deeply whiten teeth because peroxide in toothpaste does not function as a whitening agent on intrinsic stains.  Instead, Optic White only reaches surface stains (created on the surface of teeth by substances like wine, coffee, or tobacco) by abrading the surface of teeth.[1]  Thus, Defendant's "deeply whitens" representations on Colgate Optic White's labels are false and misleading.





---

[1] *See e.g.*, Webb, Camille, *The Tootpaste Trance*, UT Dentists (Oct. 8, 2014) (*available at* https://www.utdentists.com/2014/10/toothpastetrance/).



10.   Defendant makes the same "deeply whitens" misrepresentations in television commercials.  For example, one commercial begins with the tagline "How much whiter can your smile be?"  So that consumers can find out how much whiter their smile can be, Defendant "Introduc[es] new Colgate Optic White Whitening Protect Toothpaste."  To illustrate Optic White's supposed deeply whitening capabilities, as shown below, Defendant use a dramatization of a shell dipped in wine that "is made of calcium that can absorb stains like teeth."

11.    The commercial goes on to explain, "Brush one side with regular whitening toothpaste and the other side with Optic White.  It whitens deeper."  To emphasize the commercial's message that Optic White works by whitening intrinsic stains, beneath the shell illustration, Defendant underscores that "Colgate Optic White can penetrate to work below the tooth's surface."



12.    Because toothpaste only reaches surface stains, Defendant's shell commercial is false and misleading.

13.    Defendant highlights the same "deeply whitens" message in another commercial featuring a series of smiling women adorning themselves with sunglasses, small purses, hats and other accessories while brushing with Colgate Optic White toothpaste.  The commercial begins "Now your best accessory can be your smile with Colgate Optic White Toothpaste."



14.    While depicting sparkly Optic White particles reaching below surface stains to whiten teeth (shown below), the commercial continues, "Unlike the leading whitening toothpaste, Colgate Optic White toothpaste goes beyond surface stains to deeply whiten teeth."



15.     Like Defendant's labeling and shell commercial, Defendant's accessories commercial conveys the false and misleading message that Colgate Optic White deeply whitens teeth by acting as a whitening agent on intrinsic stains.

**B.      Colgate Optic White Toothpaste Does Not "Deeply Whiten" Teeth**

16.     Defendant's representations that Colgate Optic White toothpaste "Deeply Whitens," "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains unlike ordinary toothpastes" are false and misleading because peroxide in toothpaste does not go beyond surface stains or deeply whiten teeth.  In fact, dentists agree that peroxide in toothpaste does not work on intrinsic stains because the amount of peroxide in toothpaste is too small and gets rinsed away before it can deeply whiten teeth.

17.     As Dr. De Vizio, DMD, Vice-President for Dental Clinical Research at Colgate-Palmolive, explained on behalf of Defendant:

> **Whitening toothpastes have some disadvantages.  They don't actually whiten your teeth.  Instead, they contain an abrasive that grinds away stains on the enamel, making your teeth seem brighter. When used for a long time, the abrasive can remove so much enamel that your teeth can get stained even more easily.  In addition, using abrasive whitening toothpastes can dull veneers and crowns.  <u>Toothpastes with hydrogen peroxide for whitening don't really help much.  Because the toothpaste gets all over your mouth, including your gums, and because you might swallow some, the amount of hydrogen peroxide is small.  In addition, you probably won't brush long enough for the hydrogen peroxide to have much of an effect.</u>**[2]

18.     Dr. Vincent Mayher, dentist and the past president of the Academy of General Dentistry, similarly emphasized:

> There's no doubt that whitening toothpastes can clean stains off teeth and give them a little extra gleam.  But the term "whitening" is

---

[2] De Vizio, *What are the disadvantages of using whitening toothpaste*, Teeth Whitening, Sharecare (July 27, 2011) (*available at* http://www.sharecare.com/health/teethwhitening/ Disadvantagesofusingwhiteningtoothpaste); *see also* Dr, De Vizio DMD, Profile (*available at* http://www.sharecare.com/user/dr-william-devizio).

misleading.  **Unlike trays and strips that can bleach deep within a tooth** … **toothpastes can reach only the surface … bleaches in toothpastes are useless because they'll get rinsed away before they do anything.**[3]

19.     Yet another dentist, Dr. Mark Burhenne DDS explains "How Toothpaste Packaging Messes With Your Mind" as follows:

> The newer whitening toothpastes whiten your teeth chemically with a hydrogen peroxide-based chemical.  **These toothpastes contain the right chemical for whitening, but you're never going to get the results with only two, or even five minutes of brushing.**
>
> **Proper whitening requires you to hold the peroxide up against the tooth for several hours or more.**  You can think of the second type of whitening toothpaste like sandpaper – the increased abrasiveness in whitening toothpaste helps to polish and remove surface staining.  This is effective for removing surface staining from coffee, tea, and berries.
>
> **Be aware that you are only removing stains, not changing the intrinsic color of your teeth.**
>
> I don't recommend these toothpastes because they remove tooth structure by scraping away dentin and enamel.[4]

20.     Likewise, the material for a continuing education course, implemented in accordance with the standards of the Academy of General Dentistry Program, teaches that:

> **Toothpastes with hydrogen peroxide are not very effective** because the peroxide reacts with other substances on the teeth.  The effectiveness is also dependent on the duration of time peroxide is on the teeth.  The longer it is in contact with the tooth surface, the better it

---

[3] *See* Woolston, Chris, *Are Whitening Toothpastes a Bright Idea?*, The Healthy Skeptic, Los Angeles Times (July 4, 2011) (*available at* http://articles.latimes.com/2011/jul/04/health/la-he-skeptic-whitening-toothpaste-20110704).

[4] Burhenne, Mark, *How Toothpaste Packaging Messes With Your Mind*, Ask the Dentist (Oct. 15, 2014) (*available at* http://askthedentist.com/toothpastemarketing/)

works. **Since brushing is usually done quickly, peroxide does not have much time to work properly.**[5]

21.    Dr. Joe Oliver at London's Welbeck Clinic also explained his skepticism about the efficacy of the small amount of peroxide (0.1 %) in toothpaste:

> Unless a peroxide toothpaste is left in contact with teeth for 30 minutes it's probably not going to have an effect.[6]

22.    Richard Bebermeyer, DDS, MBA and retired professor and former chairman of restorative dentistry and biomaterials at The University of Texas Health Science Center at Houston (UTHealth) School of Dentistry also agrees that intrinsic staining cannot be achieved with toothpaste.[7]

23.    Donna Warren-Morris, a registered dental hygienist and professor at the University of Texas School of Dentistry agrees and adds that "to whiten or bleach the teeth to any significant degree, the hydrogen or carbamide peroxide concentration has to be much higher than can be found in whitening toothpastes."[8] Another registered dental hygienist, Kristina Kucinskaite, also commented that whitening toothpaste with peroxide is not in contact with the enamel surface of teeth for long enough and had too little peroxide because "[r]eal whitening needs peroxide and time."

24.    Moreover, scientific research also shows that the whitening effect of hydrogen peroxide in toothpaste is not clinically significant. As researchers summarized in the Brazilian Dental Journal: "In vitro studies show that brushing

---

[5] Dynamic Dental Educators, *Teeth Whitening*, ADA Continuing Education Recognition Program (May 1, 2014).

[6] Coleman, Claire, *Is whitening toothpaste just a waste of money?*, Daily Mail, (Jan. 20, 2013 (*available at* http://www.dailymail.co.uk/femail/article-2265539/Is-whitening-toothpaste-just-waste-money-They-promise-dazzling-Hollywood-smile-investigation-reveals-products-barely-make-difference.html)

[7] Webb, Camille, *The Toothpaste Trance*, UT Dentists (Oct. 8, 2014) (*available at* https://www.utdentists.com/2014/10/toothpaste-trance/).

[8] *Id.*

---

with toothpaste containing bleaching products do not promote significant results in discolored teeth compared to conventional dentifrices [toothpastes], concluding that these dentifrices, due to their mechanical action (abrasion) and the increase of high-performance abrasives as hydrated silica, act just at removing pigmentation, giving a false sense of whitening."[9]

25.     In another example, in the Brazilian Oral Research Journal, researchers explained that the whitening effect obtained from whitening toothpastes is not clinically significant because a "study that compared the efficacy and safety of three OTC bleaching products (1% hydrogen peroxide dentifrice [toothpaste], 18% carbamide peroxide paint-on gel, and 5% carbamide tray system) showed that … **the paint-on gel and dentifrice [toothpaste] groups did not result in significant color improvements from baseline**."[10]

26.     Colgate Optic White only makes teeth appear whiter because it contains an abrasive that grinds away stains on the enamel.  Using abrasive whitening toothpaste can remove enamel exposing the yellowish dentin beneath the surface, which can also cause teeth to stain more easily.  Indeed, Colgate Optic White received a Relative Dentin Abrasion (RDA) score of 100, and is considered *highly* abrasive, or even more abrasive than the majority of whitening toothpastes.[11]

C.    **The National Advertising Division Concluded That Defendant Misled Consumers by Claiming That Colgate Optic White Deeply Whitens Teeth**

27.     In 2012, the National Advertising Division of the Council of Better Business Bureaus ("NAD") found that Defendant did not have sufficient evidence to support the message that hydrogen peroxide as contained in Optic White functions as

---

[9] Horn, Bruna Andrade, *Clinical Evaluation of the Whitening Effect of Over-the-Counter Dentifrices on Vital Teeth*, Braz. Dent. J. Vol. 25 No. 3 (2014).

[10] Demarco, Flavio, *Over-the-counter whitening agents: a concise review*, Braz. Oral Res. Vol. 23 Supl.1 (2009).

[11] Sorin, Robert, *Toothbrush Abrasion* (*available at* http://www.nycdmd.com/toothbrush-abrasion-2/).

a significant whitening agent on intrinsic stains. Specifically, the NAD cautioned that Colgate should avoid conveying the message that whitening improvement from Optic White toothpaste is attributable to the peroxide contained in Optic White. Accordingly, the NAD recommended that Defendant discontinue claims that suggest that hydrogen peroxide in toothpaste deeply whitens and whitens below surface stains. Defendant, however, refused to change their advertising and continues to make claims about the intrinsic whitening capabilities of Colgate Optic White.[12]

28. In 2014, the NAD again conducted a compliance inquiry because, in the latest advertising for Colgate Optic White toothpaste, Defendant's Optic White packaging claims that Optic White toothpaste, "Goes Beyond Surface Stain Removal to Deeply Whiten," that "This Unique Formula is Clinically Proven to Whiten Teeth With Peroxide," and that Optic White "Goes Beyond Surface Stains Unlike Ordinary Toothpastes." [13]

29. In response to the NAD's compliance inquiry, Defendant claimed that Optic White had been "reformulated" and that new evidence supported the claims made for the "reformulated" Optic White's intrinsic whitening capabilities. The NAD disagreed because the amount of peroxide in Optic White had not changed. In particular, the NAD observed "[t]hat changes to the reformulated product are of little consequence with respect to the advertiser's claims of Optic White's ability to provide whitening benefits below the tooth surface." Further, the NAD found that the claim challenged in the 2014 compliance proceeding was not markedly different

---

[12] *NAD Recommends Colgate Discontinue Certain Claims for Optic White Toothpaste*, Advertising Self-Regulation Council (Aug. 14, 2012) (*available at* http://www.asrcreviews.org/2012/08/nad-recommends-colgate-discontinue-certain-claims-for-optic-white-toothpaste-following-pg-challenge/).

[13] *NAD Refers Advertising from Colgate to FTC for Further Review*, Advertising Self-Regulation Council (July 16, 2014) (*available at* http://www.asrcreviews.org/2012/08/nad-recommends-colgate-discontinue-certain-claims-for-optic-white-toothpaste).

from the claim that it recommended be discontinued in 2012.  Thus, the NAD found "that the claim 'whitens deeper' and related claims contravene NAD's earlier decision and recommendations and recommended that the company modify its broadcast advertising to remove the word 'deeper' and to avoid any implication that the Optic White product intrinsically whitens teeth."  Defendant again refused to bring its advertising into compliance with the NAD's decision and recommendations.[14]

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Optic White.

31.     Plaintiffs also seek to represent a subclass defined as all members of the Class who purchased Optic White in California ("the California Class").

32.     Excluded from the Classes are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

33.     Also excluded from the Classes are persons or entities that purchased Optic White for purposes of resale.

34.     Plaintiffs are members of the Classes they seek to represent.

35.     The Classes are so numerous that joinder of all members is impractical. Although Plaintiffs do not yet know the exact size of the Classes, Optic White is sold in major retail stores across the United States, including stores such as Target, and Walgreens.  Major online retailers include Amazon.com and Drugstore.com.  Upon information and belief, the Class includes more than one million members.

---

[14] *Id.*

36. The Classes are ascertainable because the Class Members can be identified by objective criteria – the purchase of Colgate Optic White toothpaste during the Class Period. Individual notice can be provided to Class Members "who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

37. There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

(a) Whether Defendant breached an express warranty made to Plaintiffs and the Class;

(b) Whether Defendant breached the implied warranty of fitness for a particular purpose;

(c) Whether Defendant's marketing of Optic White is false, misleading, and/or deceptive;

(d) Whether Defendant's marketing of Optic White is an unfair business practice;

(e) Whether Optic White goes beyond surface stains to deeply whiten teeth;

(f) Whether Optic White is clinically proven to whiten with peroxide and to go beyond surface stains to deeply whiten teeth;

(g) Whether Defendant was unjustly enriched by its conduct;

(h) Whether Defendant violated the CLRA;

(i) Whether Defendant violated the UCL;

(j) Whether Defendant violated the FAL;

(k) Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations; and

(l) Whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the Class Members are entitled to restitution,

injunctive and/or monetary relief and, if so, the amount and nature of such relief.

38.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiffs have no interests antagonistic to the interests of the other members of the Class.  Plaintiffs and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

39.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

40.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## COUNT I

### (Breach of Express Warranty)

41.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

42.     Plaintiffs bring this Count individually and on behalf of the members of the Class.

43.     In connection with the sale of Optic White, Defendant issued express warranties including that Optic White would go beyond surface stains to deeply whiten teeth, that Optic White is clinically proven to whiten teeth with peroxide and to go beyond surface stain removal to deeply whiten teeth, and that Colgate Optic White penetrates to work below the tooth's surface.  Defendant expressly warranted that Optic White was effective and would whiten intrinsic stains below the tooth's surface.

44.     Defendant's affirmations of fact and promises made to Plaintiffs and the Class on Optic White labels and in television commercials, became part of the basis of the bargain between Defendant on the one hand, and Plaintiffs and the Class Members on the other, thereby creating express warranties that Optic White would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

45.     Defendant breached its express warranties because Optic White does not in fact deeply whiten teeth, does not go beyond surface stain removal, and is not clinically proven to whiten with peroxide below the tooth's surface.  In short, Optic White does not perform as expressly warranted.

46.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Optic White if they had known the true facts; (b) they paid for Optic White due to the

mislabeling; and (c) Optic White did not have the quality, effectiveness, or value as promised.  As a result, Plaintiffs and the Class have been damaged.

## COUNT II

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

47.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

48.     Plaintiffs bring this Count individually and on behalf of the members of the Class.

49.     Defendant marketed, distributed, and/or sold Optic White with implied warranties that they were fit for the particular purpose of deeply whitening teeth, and going beyond surface stain removal to whiten below the tooth's surface.  However, the peroxide in Optic White has no effect on intrinsic stains in teeth and does not deeply whiten teeth.  At the time Optic White was sold, Defendant knew or should have known that Plaintiffs and the Class Members would rely on Defendant's skill and judgment regarding the efficacy of Optic White.

50.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class Members purchased Optic White for use in deeply whitening teeth.

51.     Optic White was not altered by Plaintiffs or the Class Members.

52.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Optic White if the true facts concerning their efficacy had been known; (b) they paid an increased price for Optic White based on Defendant's representations regarding Optic White's efficacy; and (c) Optic White did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class Members have been damaged.

## COUNT III

### (Consumer Legal Remedies Act, Civil Code §§ 1750, *et. seq.*)

53.     Plaintiffs bring this Count individually and on behalf of the California Class.

54.     Plaintiffs and the California Class Members are consumers who purchased Optic White for personal, family, or household purposes.  Accordingly, Plaintiffs and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiffs and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of Optic White.

55.     At all relevant times, Optic White constituted a "good" as that term is defined in Cal. Civ. Code § 1761(a).

56.     At all relevant times, Defendant was a "person" as that term is defined in Civ. Code § 1761(c).

57.     At all relevant times, Plaintiffs' purchase of Optic White, and the purchases of Optic White by other Class Members, constituted  "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendant's actions, representations, and conduct has violated, and continues to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of Optic White to consumers.

58.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Optic White to Plaintiffs and the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

59.     Defendant represented that Optic White had sponsorship, approval, characteristics, uses, and benefits which it did not have in violation of Cal. Civ. Code § 1770(a)(5).

60.     Defendant represented that Optic White was of a particular standard, quality, and grade, when it was another, in violation of California Civil Code § 1770(a)(7).

61.     Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Optic White was effective at deeply whitening teeth, and effective at going beyond surface stain removal to deeply whiten teeth when, in fact, it was not.

62.     Defendant represented that Optic White was of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that Optic White deeply whitens teeth, and that it was clinically proven to whiten and go beyond surface stain removal when Optic White does not deeply whiten, and does not go beyond surface stain removal.

63.     Defendant advertised Optic White with the intent not to sell it as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant did not intend to sell Optic White as advertised because Defendant knew that peroxide in toothpaste is not effective at deeply whitening teeth, or at removing intrinsic stains in teeth.

64.     Plaintiffs and the California Class Members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiffs and the Class Members would not have purchased Optic White if they had known the true facts; (b) Plaintiffs and the Class paid an increased price for Optic White due to the mislabeling of Optic White; and (c) Optic White did not have the level of quality, effectiveness, or value as promised.

65.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  A true and correct copy of Plaintiff Dean's letter is attached as Exhibit A.  In December 2014, Plaintiff Dean sent Defendant a letter via certified mail, return receipt

requested, advising Defendant that it is in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770. Defendant was further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff Dean would bring an action for damages pursuant to the CLRA.

66.     Wherefore, Plaintiffs seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT IV

### (False Advertising Law, Business & Professions Code §§17500 *et seq.*)

67.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

68.     Plaintiffs bring this Count on behalf of the California Class.

69.     California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70.     Throughout the Class Period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of Optic White, as described above, and including, but not limited to, representing that Optic White deeply whitens teeth, that Optic White is clinically proven to whiten and go beyond surface stain removal to deeply whiten teeth, and that Optic White whitens intrinsic stains.

71.     Defendant knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

72.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

73.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiffs and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness of Optic White; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

74.     Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers.  Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT V

### (The "Unlawful Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

75.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

76.     Plaintiffs bring this Count on behalf of the California Class.

77.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent

business practices and unfair, deceptive, untrue or misleading advertising ….”  The UCL also provides for injunctive relief and restitution for UCL violations.

78.    “By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable.”  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

79.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL “unlawful” violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

80.    Defendant violated the “unlawful prong” by violating the CLRA, and the FAL, as well as by breaching express and implied warranties as described herein.

81.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant’s UCL “unlawful prong” violation because: (a) Plaintiffs and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness and contents of Optic White; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

82.    Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs’ attorneys’ fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VI

## (The "Fraudulent Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

83.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

84.     Plaintiffs bring this Count on behalf of the California Class.

85.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

86.     Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL because Defendant represented that Optic White deeply whitens teeth, and goes beyond surface stain removal to deeply whiten teeth when, in fact, it does not.  As described above, Defendant misrepresented that Optic White deeply whitens and that it is clinically proven to whiten teeth with peroxide and to go beyond surface stains.

87.     Plaintiffs and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of Optic White, and they acted reasonably when they purchased Optic White based on their belief that Defendant's representations were true.

88.     Defendant knew or should have known, through the exercise of reasonable care, that their representations about Optic White were untrue and misleading.

89.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation because: (a) Plaintiffs and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness of Optic White; (b)

Plaintiffs and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

90.     Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VII

## (The "Unfair Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

91.     Plaintiffs repeats the allegations contained in the paragraphs above as if fully set forth herein.

92.     Plaintiffs brings this Count on behalf of the California Class.

93.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

94.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiffs and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

95.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that Optic White will deeply whiten teeth, that Optic White will whiten intrinsic stains, and that Optic White is clinically proven to whiten

with peroxide to go beyond surface stain removal.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of toothpaste is unethical and unscrupulous especially because consumers trust companies like Defendant to provide accurate information about dental care.  Taking advantage of that trust, Defendant misrepresents the effectiveness of Colgate Optic White to sell more toothpaste.  Consumers believe that Defendant is an authority on the effectiveness and quality of toothpaste for dental care and therefore believe Defendant's representations that toothpaste can magically penetrate the tooth's surface when in fact Optic White's abrasive properties wears off the outer layer of teeth exposing the yellowish under layer.  Defendant's practices are also substantially injurious to consumers because, among other reasons, consumers pay for toothpaste that purportedly deeply whitens teeth, while in fact, they are unknowingly rubbing off the surface layer of their teeth exposing dentin.

96.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation because: (a) Plaintiffs and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness and contents of Optic White; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

97.    Pursuant to Bus. & Prof. Code §17203, Plaintiffs, and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

1      **WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

2      A.      Determining that this action is a proper class action;

3      B.      For an order declaring that the Defendant's conduct violates the statutes

4  referenced herein;

5      C.      Awarding compensatory and punitive damages in favor of Plaintiffs,

6  members of the Class, and the California Class against Defendant for all damages

7  sustained as a result of the Defendant's wrongdoing, in an amount to be proven at

8  trial, including interest thereon;

9      D.      Awarding injunctive relief against Defendant to prevent Defendant

10  from continuing their ongoing unfair, unconscionable, and/or deceptive acts and

11  practices;

12      E.      For an order of restitution and/or disgorgement and all other forms of

13  equitable monetary relief;

14      F.      Awarding Plaintiffs and members the Class their reasonable costs and

15  expenses incurred in this action, including counsel fees and expert fees; and

16      G.      Awarding such other and further relief as the Court may deem just and

17  proper.

18                          **<u>JURY DEMAND</u>**

19      Plaintiffs hereby demands a trial by jury on all claims so triable in this action.

20

21  Dated:  May 23, 2017                    Respectfully submitted,

22                                          **BURSOR & FISHER, P.A.**

23

24                                          By:_____ */s/ L. Timothy Fisher*_____
                                                          L. Timothy Fisher

25
                                            L. Timothy Fisher (State Bar No. 191626)
26                                          Yeremey O. Krivoshey (State Bar No.295032)
                                            1990 North California Blvd., Suite 940
27                                          Walnut Creek, CA  94596
                                            Telephone: (925) 300-4455
28

---

Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        ykrivoshey@bursor.com

**LEVI & KORSINSKY, LLP**
Shane T. Rowley (*pro hac vice*)
Courtney E. Maccarone (*pro hac vice*)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510
Email: srowley@zlk.com
        cmaccarone@zlk.com

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (State Bar No. 298219)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952
chris@marlboroughlawfirm.com

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
Todd S. Garber (*pro hac vice*)
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Telephone: (914) 298-3283
Facsimile: (914) 824-1561
Email: tgarber@fbfglaw.com

*Counsel for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jacqueline Dean, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      This is a proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged occurred in the Central District of California because I reside in this District and purchased Colgate Optic White in this District.

3.      While living in Fontana, California I purchased numerous tubes of Colgate Optic White toothpaste at Walgreens and Target retail stores.  I purchased Colgate Optic White after I read statements on the products' labels and viewed advertising materials characterizing the product as a whitening toothpaste that goes beyond surface stain removal to deeply whiten teeth.  These representations were substantial factors influencing my decision to purchase Colgate Optic White.  I would not have purchased Colgate Optic White had I known that the product was not effective to deeply whiten teeth.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 30 , 2014 in Fontana, California.

JACQUELINE DEAN

**EXHIBIT A**

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA  94596
www.bursor.com

ANNICK M. PERSINGER
Tel: 925.300.4455
Fax: 925.407.2700
apersinger@bursor.com

December 2, 2014

*Via Certified Mail - Return Receipt Requested*

Colgate-Palmolive Co.
300 Park Avenue
New York, New York 10022

Re:     *Demand Letter Pursuant to California Civil Code § 1782,
         Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client, Jacqueline Dean, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of Colgate Optic White toothpaste.  On the labels, in commercials, and online, you misrepresent that Colgate Optic White toothpaste "Goes Beyond Surface Stain Removal To Deeply Whiten," "Deeply Whitens," and "goes beyond surface stains."  In fact, Colgate Optic White toothpaste only reaches surface stains by abrading teeth.  Indeed, with a Relative Dentin Abrasion (RDA) score of 100, Colgate Optic White is considered highly abrasive.  Further, authorities on dental care agree that peroxide in toothpaste is useless because it gets rinsed away before it does anything.  Thus, Colgate Optic White does not "deeply whiten," or "[go] beyond surface stain removal" because it does not function as a whitening agent on intrinsic stains.

Ms. Dean, a resident of California, purchased Colgate Optic White based on the "deeply" whitening claims on the product label and in television commercials.  She would not have purchased Colgate Optic White if the label had not stated that it would deeply whiten her teeth.  Although she has been purchasing and using Colgate Optic White since January 2013, Colgate Optic White has not deeply whitened her teeth, or affected any of the intrinsic stains on her teeth.

Ms. Dean is acting on behalf of a class defined as all persons in the United States California who purchased Colgate Optic White toothpaste (hereafter, the "Class").

BURSOR&FISHER
P.A.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel Colgate Optic White toothpaste; (2) issue an immediate recall on any Colgate Optic White toothpaste products bearing false and misleading labels; and (3) make full restitution to all purchasers of Colgate Optic White toothpaste of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for Colgate Optic White toothpaste;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of Colgate Optic White toothpaste;

3. All communications with the National Advertising Division concerning the product development, manufacturing, marketing and sales of Colgate Optic White toothpaste

4. All documents concerning the advertisement, marketing, or sale of Colgate Optic White toothpaste; and

5. All communications with customers concerning complaints or comments concerning Colgate Optic White toothpaste.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Annick M. Persinger